Anna M. Opsahl, Administratrix, *vs.* Samuel Judd and others.

January 8, 1883.

**Negligence—Damages—Evidence of Deceased's Business Ability, etc.**
In an action under the statute to recover damages for the death of plaintiff's intestate, caused by the alleged negligence of the owners of a steamboat, *held* proper, for the purpose of showing the reasonable expectation of pecuniary benefit to the mother of the deceased, to admit evidence of his pecuniary circumstances and ability to make money, habits of industry, her dependence upon him, and his assistance and promises of support, and other circumstances of like character.

**Same—Injuries Received on Steamboat Excursion on Sunday.**—*Held*, also, that the question of defendants' liability is not affected by the fact that the injury resulting in his death occurred while deceased was engaged on an excursion with other passengers upon defendants' steamboat in violation of the Sunday law. The general obligation of the defendants to use such care and diligence as the law enjoins upon carriers of passengers is not determined by the contract or engagement with the passengers, but by considerations of public policy.

**Jurisdiction over Water-Highways between States.**—The states of Wisconsin and Minnesota have concurrent jurisdiction upon the St. Croix river and its waters, the same being a common highway between them; and for an injury resulting in the death of a party while navigating its waters, an action may be brought in the proper court in this state, and the jurisdiction of such court is not affected by the fact that the boat was at the time on the east or Wisconsin side of the centre of the stream.

Appeal by plaintiff from an order of the district court for Washington county, *Crosby,* J., presiding, refusing a new trial. The case is stated in the opinion.

*J. N. & I. W. Castle,* for appellant.

The court erred in refusing to admit evidence as to the pecuniary loss which the next of kin to the deceased sustained by reason of his death. *Railroad Co.* v. *Barron,* 5 Wall. 90; *McIntyre* v. *N. Y. C. R. Co.,* 37 N. Y. 287; *Chicago, etc., R. Co.* v. *Shannon,* 43 Ill. 338; *Ewen* v. *Chicago & N. W. Ry. Co.,* 38 Wis. 613; *Kansas P. R. Co.* v. *Cutler,* 19 Kan. 83; *March* v. *Walker,* 48 Tex. 372; *Baltimore & Ohio R. Co.* v. *Wightman,* 29 Gratt. 431; *Nashville, etc., R. Co.* v. *Stevens,* 9 Heisk. (Tenn.) 12.

*Marsh, Searles & Nethaway* and *Geo. F. Sabin,* for respondent.

The court had not jurisdiction to try this case. Field on Damages, 507; *Whitford* v. *Panama R. Co.,* 23 N. Y. 465; *Selma, etc., R. Co.* v. *Lacy,* 43 Ga. 461; *McCarthy* v. *Chicago, etc., R. Co.,* 18 Kan. 46; Rorer on Inter-State Law, 336.

VANDERBURGH, J. This action is brought by plaintiff, who is the mother and administratrix of Ole Opsahl, deceased, to recover damages for his death, alleged to have been occasioned by the wrongful acts and negligence of defendants' servants in the management of their steamboat, on which deceased was a passenger. It appears that on or about May 1, 1881, one Taenhauser chartered of defendants' agents the steamboat in question for an excursion from Stillwater to Taylor's Falls, on the St. Croix river, in this state, on Sunday, May 15th, following; the same, however, to be run and managed by the servants and employes of defendants. Plaintiff's intestate took passage on the boat as one of the excursion party on that day, and was thrown overboard and drowned. At the trial sev-

eral exceptions were reserved to the ruling of the court upon the admissibility of testimony, and, when plaintiff rested her case, the action was dismissed on defendants' motion, upon several grounds, which will be considered on this appeal.

1. We think there can be little doubt that there was evidence in the case properly for the consideration of the jury, tending to prove that the accident was caused by negligence or mismanagement on the part of defendants' servants.

2. Upon the question of damages, evidence tending to show what was the reasonable expectation of pecuniary benefit to the plaintiff, as mother of the deceased, from the continuance of his life, was proper. *Shaber* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 103. The pecuniary circumstances of deceased, his habits of industry, his accustomed earnings, measure of success in business, and the dependence she might reasonably place on him for support and assistance in the future, growing out of his filial kindness and promises of support, were therefore proper evidence for the jury to consider. *McIntyre* v. *N. Y. Cent. R. Co.*, 37 N. Y. 287; 2 Wait, Act. & Def. 478. Evidence of this character should therefore have been received.

3. It appears that the deceased, at the time of the accident, was on a barge which accompanied the steamboat, and was fastened to it by ropes. The evidence tended to show that the accident was caused by the barge being run into the shore, the shock causing one of the lines to break, and the two boats to swing apart. It was for the jury to say whether the breaking of this line was an efficient cause of the accident, and whether it was sufficiently strong and safe for the use to which it was put; and they were properly entitled to the evidence of the surroundings and the incidents connected with these main facts, and constituting the *res gestæ*, so far as they were at all material, their weight being for the jury. But we think the court rightly rejected the offer to prove the remark made at the time by one of defendants' employes, that "that rope had nearly drowned two or three other men before," as relating to past matters, and immaterial and foreign to the matter depending at the time.

4. It is further contended that the deceased was, by accepting passage upon the steamboat, engaged in an unlawful act, and was

*particeps criminis* with the defendants and their agents in violating the Sunday law. It is a sufficient answer to this objection that the defendants on that day occupied the relation of common carriers of passengers, and their general obligation to use such care and diligence as the law enjoins is not limited by the contract with the passengers, nor with the person who engaged the use of the boat and the services of the crew for that day, but is governed by considerations of public policy. That the undertaking was unlawful does not touch the question. *Carroll* v. *Staten Island R. Co.*, 58 N. Y. 126, 134; *Jacobus* v. *St. Paul & Chicago Ry. Co.*, 20 Minn. 110, (125.) As remarked by the court in that case, "any relaxation in the rule as to duty or liability naturally, and, it may be said, inevitably, tends to bring about a corresponding relaxation of care and diligence upon the part of the carrier." The suggestion that if the deceased had not joined in the excursion he would have escaped, may perhaps serve to enforce a valuable lesson which finds a sanction in law and morals, but as between him and the defendants he was rightfully on the boat. His presence did not (in a proper sense) contribute to or cause the accident; and in such cases wrong-doers, though answerable to the state or parties injured by them for their own acts, are entitled to the protection of the laws against the wrongful acts or culpable negligence of others. *Carroll* v. *Staten Island R. Co.*, 58 N. Y. 126, 136.

*Lastly,* it is conceded that the casualty occurred on the east or Wisconsin side of the channel of the river. By the legislation of congress, and the constitutions of the states of Wisconsin and Minnesota, adopted in conformity therewith, these states have concurrent jurisdiction on the St. Croix river and its waters. The interstate boundary line is conceded to be the centre of the main channel, and the jurisdiction of each state beyond that and opposite the shore possessed by it is limited to the river and its waters. Since each state has accepted and consented to this qualified grant of jurisdiction on the waters of the river within and beyond its boundary line, and incorporated it in its constitution, it is substantially the same as if each had ceded such jurisdiction, and the rights and priv-

ileges incident thereto. This doctrine of concurrent jurisdiction was recognized in *State* v. *Dimick*, 12 N. H. 194, where the state of New Hampshire had ceded territory to the United States, reserving to the state certain jurisdiction therein. See, also, *Com.* v. *Frazee*, 5 Am. Law Reg. (O. S.) 167; S. C. 2 Phila. 191. If there were any question upon principle as to the power of a state thus to grant or accept a qualified jurisdiction, the practice of the state and general governments has too long been recognized and acted on to permit the courts to question the existence or validity of such concurrent but limited jurisdiction. The operation of the general laws of the state, without any express provision therein on the subject, must be co-extensive with its jurisdiction. *Sherlock* v. *Alling*, 44 Ind. 184, 193. But beyond its own boundary the courts of each state can only take cognizance of such causes of action as arise upon "the river and its waters," and such as are appropriate to the nature of the jurisdiction which the state is entitled to exercise. We are not called on in this case to accurately define the limits of such jurisdiction, but it would seem clear that the case at bar is within it. If persons while upon the St. Croix river, and navigating its waters, are within the jurisdiction of the state, they should be deemed entitled to the protection of its laws; and the question of a right of action should not be made to depend upon the accident that at a particular point of time a boat happened to be in whole or in part on one or the other side of the centre of the stream. *Sherlock* v. *Alling, supra; State* v. *Mullen*, 35 Iowa, 199, 203; *Gilbert* v. *Moline Water-power & M'f'g Co.*, 19 Iowa, 321, 322; *State* v. *Cameron*, 2 Pinney, 490.

The case should not have been withdrawn from the jury, and the order denying a new trial should be reversed.