361 N.W.2d 112 (1985)
In re SHIPOWNERS LITIGATION.
I.S. JOSEPH COMPANY, INC., et al., Appellants,
v.
Erik HELLSTENIUS, et al., Additional Defendants on Counterclaim, Respondents.
No. C2-84-1403.
Court of Appeals of Minnesota.
January 22, 1985.
*114 William Z. Pentelovitch and Mary R. Vasaly, Minneapolis, for appellants.
William E. Mullin and Roy E. Potter, Minneapolis, for respondents.
Heard, considered, and decided by NIERENGARTEN, P.J., and FOLEY and CRIPPEN, JJ.

OPINION
FOLEY, Judge.
This is an appeal from dismissal of appellants' counterclaim against respondents for lack of personal jurisdiction.

FACTS
Plaintiffs in this action are two Norwegian partnerships, Partrederiet Lista (Lista) and Partrederiet Polycrest (Polycrest); a Liberian corporation, Scout Shipping Co., Inc. (Scout); a Danish corporation, J. Lauritzen; and a Japanese corporation, Taiheiyo Kaiun Co. Ltd. Defendants are I.S. Joseph Co., Inc. (JOSCO), a Minnesota corporation; Norwest Bank Minneapolis (Bank); I.S. Joseph Shipping Co, Ltd. (Shipping), a Bahamian corporation; and Burton M. Joseph (Joseph).
The plaintiffs own ocean-going vessels which they chartered in 1981 to defendant Shipping, for use in international maritime trade. In late summer 1981, Shipping became insolvent. It failed to pay the $10,000,000 rent due on the charter agreements. In early September 1981, a representative from Shipping and a representative from JOSCO, met in Europe with representatives of the plaintiffs, Lista, Polycrest, Lauritzen and Scout. At these meetings the parties tried to negotiate a settlement.
Shipping's parent company, JOSCO, a Minnesota corporation which wholly owns Shipping, invited various representatives of the plaintiffs to come to Minneapolis to work out an arrangement regarding the default. A meeting was conducted at JOSCO's Minneapolis offices in September 1981. During the next few weeks, settlement meetings were conducted in London and Europe. From September to December 1981 both sides communicated extensively via telex and telephone. When the negotiations initiated by Shipping and JOSCO failed to resolve Shipping's default, plaintiffs commenced this action in the Hennepin County District Court.
JOSCO, Shipping, and Joseph (appellants in this action) counterclaimed against the plaintiffs. They also named as additional defendants on the counterclaim three additional corporations, Nordisk, a legal defense firm, Mosvolds, and Rasmussen, along with various officers and representatives of all the firms. The additional defendants on the counterclaim are the respondents in this action.
The additional defendants on the counterclaim (respondents) successfully moved for dismissal of appellants' counterclaim for failure of service of process and lack of personal jurisdiction.

ISSUE
Did the trial court err by dismissing the counterclaim due to lack of personal jurisdiction over the respondents?

DISCUSSION
There are two hurdles appellants must surmount to establish personal jurisdiction, statutory and constitutional. Appellants claim that the foreign corporations transacted business in Minnesota, subjecting them to jurisdiction under Minn.Stat. § 543.19, subd. 1(b) (1980). They also claim *115 the individuals who attended the September meeting committed acts in Minnesota causing injury or property damage under Minn.Stat. § 543.19, subd. 1(c) (1980), by violating the Minnesota Antitrust law, Minn.Stat. §§ 325D.49-66 (1980).
The more substantial question is whether there are sufficient jurisdictional contacts to permit the maintenance of this counterclaim. Appellants allege respondents had sufficient contacts with Minnesota to authorize personal jurisdiction under the Minnesota long arm statute, Minn.Stat. § 543.19 (1980). Minnesota interprets its long arm statute to extend personal jurisdiction in its courts to the limits of the due process clause of the fourteenth amendment. Mid-West Medical, Inc. v. Kremmling Medical-Surgical Associates, 352 N.W.2d 59, 60 (Minn.Ct.App.1984), (citing Toro Co. v. Ballas Liquidating Co., 572 F.2d 1267, 1269 (8th Cir.1978)).
Due process requires sufficient minimum contacts between the nonresident defendant and the forum state so that the exercise of jurisdiction complies with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
Defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
To determine jurisdiction over nonresidents, Minnesota uses the five part test developed in Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir.1965). The test investigates: (1) the quantity of contacts; (2) the nature and quality of contacts; (3) the source and connection of those contacts to the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties.
This court recently discussed the requirements for the constitutional exercise of jurisdiction over nonresidents who are parties to contracts with Minnesota residents in Mid-West Medical, Inc., 352 N.W.2d at 60. There, the court indicated that since the World-Wide Volkswagen decision, courts tend to require greater contacts before finding personal jurisdiction. In Dent-Air, Inc. v. Beech Mountain Air Service, Inc., 332 N.W.2d 904 (Minn.1983), the court did not grant jurisdiction where an out-of-state lessee of three airplanes was not an active party in creating the first lease and took delivery of aircraft outside Minnesota. Neither did a four-year agreement for the sale of 6,000 railroad car parts involving numerous shipments to Minnesota constitute sufficient contacts to confer jurisdiction. Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309 (8th Cir.1982).
Here, respondents had leases to time charter their vessels to Shipping. None of the respondents had an office in Minnesota, nor did any of their employees live here. The sole meeting in Minneapolis was instigated by Shipping. A single meeting in Minnesota and accompanying correspondence do not suffice to create minimum contacts nor to satisfy the requirement of "transacting business" found in Minn.Stat. § 543.19. Conwed Corp. v. Nortene, 404 F.Supp. 497 (D.Minn.1975). Likewise, a single meeting where the focus is negotiation of a settlement, rather than the promotion of business, cannot comprise sufficient contact for the exercise of personal jurisdiction, especially where respondents came to Minnesota at the request of appellants to discuss a possible settlement of their contract differences. See Washington Scientific Industries, Inc. v. Polan Industries, Inc., 302 F.Supp. 1354, 1358 (D.Minn.1969). To hold under such circumstances that personal jurisdiction attaches would amount to a form of civil entrapment not contemplated in law.

Antitrust statute
Appellants also allege that personal jurisdiction rests under Minn.Stat. § 325D.61 (1980). This statute imposes liability upon *116 individuals or agents who aided, abetted or advised their principal to violate the act. Section 325D.61, subd. 2, provides in part:
The individuals, in their capacity as individuals, are subject to the provisions of sections 325D.49 to 325D.66, and may be joined, if subject to personal jurisdiction, as additional parties defendant in the proceedings * * *.
Id., (emphasis added.)
As is apparent from the statutory language, this section does not form an independent basis for jurisdiction. Rather, under this provision, one must establish personal jurisdiction before the statute can be invoked to impose individual liability. It has already been established that there are insufficient contacts to establish personal jurisdiction. Therefore, these individuals cannot be sued under the Antitrust law.
The United States District Court for Minnesota dismissed the action in the companion case, on similar facts as presented here.
Therefore, the respondents' contacts with Minnesota do not comprise purposefully availing themselves of the privilege of conducting activities within Minnesota. Given the international nature of many transactions today, a standard which conferred jurisdiction based on one meeting would broaden the jurisdiction of the courts to a degree unimagined by the World-Wide Volkswagen court.

DECISION
We affirm the decision of the trial court.