KSTP–FM, LLC, Appellant,

v.

SPECIALIZED COMMUNICATIONS, INC., Defendant,

**Adtronics Signs, Ltd., Respondent.**

**No. C7–99–770.**

Court of Appeals of Minnesota.

Dec. 14, 1999.

---

Creighton R. Magid, Kristin S. Westgard, Dorsey & Whitney LLP, Minneapolis, for appellant.

Duane W. Krohnke, Eunice P. de Carvalho, Faegre & Benson LLP, Minneapolis, for respondent Adtronics Signs.

Considered and decided by KALITOWSKI, Presiding Judge, WILLIS, Judge, and EDWARD D. MULALLY,* Judge.

## OPINION

KALITOWSKI, Judge.

Appellant KSTP–FM, LLC (KSTP) challenges the district court's order granting respondent Adtronics's motion to dismiss for lack of personal jurisdiction. KSTP argues the district court erred in determining Adtronics had insufficient minimum contacts with Minnesota to satisfy due process requirements.

## FACTS

Appellant KSTP–FM, LLC (KSTP) is a Delaware limited liability company with its principal place of business in St. Paul, Minnesota. KSTP owns and operates a radio station in the Twin Cities known as "KSTP–FM" and "KS95." Respondent Adtronics Signs, Ltd. (Adtronics) is a Canadian corporation with its principal place of business in Delta, British Columbia, Cana-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

da. Specialized Communications, Inc., (Specialized) is a Washington corporation with its principal place of business in Bellevue, Washington.

In March 1995, KSTP and Specialized entered into an agreement for KSTP's lease and eventual purchase of two radio-linked electronic billboard message systems, known as Musicboard systems. The billboards were supposed to be capable of reading messages encoded in KSTP's radio signal and then displaying the decoded messages on an electronic display area on the billboard's face. The messages were to consist of the artist and song title of each song as it was broadcast by KSTP.

In April 1995, Specialized placed an order with Adtronics to manufacture the billboards and remote control systems. At the time it placed the order, Specialized told Adtronics that it would provide a shipping destination at a later date. Sometime thereafter, Specialized directed Adtronics to ship the equipment directly to KSTP's sign installer in Minneapolis. In the meantime, KSTP and Specialized modified their original rental agreement to reflect KSTP's outright purchase of the billboard systems. Adtronics shipped the equipment to Minnesota in July and August 1995, and billed Specialized directly for the price of the equipment and the shipping charges.

KSTP was not satisfied with the performance of the billboards. After the first billboard failed to operate properly, KSTP contends that Adtronics either hired or sent a technician to Minnesota to attempt to repair it.[1] At Specialized's request, sometime in early August 1995, Adtronics hand-delivered a replacement central-processing unit to Specialized in Washington, which Specialized then forwarded to KSTP. KSTP also hired an independent consultant to examine the billboards. At the request of KSTP's attorney, Adtronics forwarded schematics of the billboards directly to KSTP for the consultant's use.

The billboards never became fully operational, and KSTP filed suit against Specialized and Adtronics for breach of the implied warranties of merchantability and fitness for a particular purpose. Specialized moved to dismiss on the basis that any dispute between KSTP and Specialized was subject to the arbitration clause in the original contract. Adtronics moved for dismissal for lack of personal jurisdiction and for failure to state a claim upon which relief could be granted.

In its judgment of April 6, 1999, the district court ordered KSTP and Specialized to submit to binding arbitration in Washington, pursuant to the terms of their original agreement. The district court dismissed KSTP's complaint against Adtronics on the basis that it lacked personal jurisdiction over Adtronics. The district court also held that, even if Minnesota had personal jurisdiction over Adtronics, KSTP's complaint would merit dismissal because the United Nations Convention on Contracts for the Sale of International Goods (CISG) applies to the contract between Specialized and Adtronics, and the CISG confers no rights on KSTP as a third-party beneficiary. KSTP filed its notice of appeal on May 5, 1999. This court dismissed KSTP's appeal of the district court's order for arbitration as premature, but allowed the appeal on the jurisdiction issue to proceed.

### ISSUE

Did the district court err in concluding that Adtronics lacked sufficient contacts with Minnesota to justify the exercise of personal jurisdiction?

### ANALYSIS

 The existence of jurisdiction is a question of law, which this court reviews

---

1. Adtronics denies that it hired or sent a technician to Minnesota, and argues KSTP has not presented appropriate evidence in support of that allegation. But for purposes of ana-

lyzing the jurisdictional question, we assume KSTP's allegation is true. *See Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 293, 240 N.W.2d 814, 816 (Minn.1976).

de novo. *Stanek v. A.P.I., Inc.*, 474 N.W.2d 829, 832 (Minn.App.1991), *review denied* (Minn. Oct. 31, 1991). Upon review of a pretrial order dismissing for lack of personal jurisdiction, plaintiff's allegations and evidence supporting jurisdiction must generally be taken as true. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (Minn.1976); *TRWL Fin. Establishment v. Select Int'l, Inc.*, 527 N.W.2d 573, 575 (Minn.App.1995). When a defendant challenges personal jurisdiction, the plaintiff has the burden of presenting a prima facie case demonstrating sufficient minimum contacts. *Does 1–22 v. Roman Catholic Bishop*, 509 N.W.2d 598, 600 (Minn.App.1993). In doubtful cases, the court should resolve the jurisdictional question in favor of retaining jurisdiction. *Hardrives, Inc.*, 307 Minn. at 296, 240 N.W.2d at 818.

■ A court may exercise personal jurisdiction over a nonresident defendant if the requirements of Minnesota's long-arm statute are met and there are sufficient minimum contacts to satisfy constitutional due process requirements. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 29 (Minn.1995); *Jenson v. R.L.K. & Co.*, 534 N.W.2d 719, 722 (Minn.App.1995), *review denied* (Minn. Sept. 20, 1995). The parties do not dispute that Minnesota's long-arm statute provides for jurisdiction over Adtronics. Thus, the only question is whether the district court correctly concluded that Adtronics had insufficient minimum contacts with Minnesota to satisfy due-process requirements.

■ Due process requires that before a court can extend personal jurisdiction, minimum contacts must exist between a nonresident defendant and the state in order to satisfy "traditional notions of fair play and substantial justice." *Domtar*, 533 N.W.2d at 29 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). To meet this burden, a plaintiff must show sufficient contacts in the complaint and supporting evidence, which are to be viewed as true for purposes of this analysis. *V.H. v. Estate of Birnbaum*, 529 N.W.2d 462, 466 (Minn.App.1995), *aff'd by* 543 N.W.2d 649 (Minn.1996).

■ Minnesota uses a five-factor test to assess the fairness of exercising personal jurisdiction over a nonresident defendant: (1) quantity of contacts with the forum state; (2) quality and nature of contacts; (3) connection between the cause of action and the contacts; (4) the state's interest in providing a forum; and (5) convenience to the parties. *Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 295 (Minn.1978). The first three factors are of primary concern, while the last two merit less consideration. *TRWL Financial*, 527 N.W.2d at 576 (citing *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn.1983)). The purpose of examining these five factors is to determine whether nonresidents have "purposefully availed" themselves of the protection and benefits of Minnesota law. *Dent–Air, Inc.*, 332 N.W.2d at 907.

■ The law distinguishes between two types of personal jurisdiction, specific and general. *Domtar, Inc.*, 533 N.W.2d at 30. General personal jurisdiction exists when a nonresident has such substantial contacts with the forum state that the state may exert jurisdiction over the nonresident for any purpose. *Id.* Specific personal jurisdiction is appropriate where the nonresident's contacts are minimal, but the cause of action arises out of or is related to those contacts. *Id.; see also Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn.1992). Even a single, isolated transaction between a nonresident and a forum state may be sufficient to justify the exercise of personal jurisdiction. *Marquette Nat'l Bank*, 270 N.W.2d at 295.

■ A nonresident's contacts with the forum state, not with residents of the forum state, determine whether minimal contacts exist. *West Am. Ins. Co. v. Westin, Inc.*, 337 N.W.2d 676, 679 (Minn.1983). Here, Adtronics's contacts with Minnesota

are few in number. Adtronics: (1) has never had an office, owned property, or filed taxes in Minnesota; (2) has never had a mailing address or telephone number in Minnesota; and (3) did not negotiate a sales or rental contract directly with KSTP. Adtronics sold two billboards to Specialized in Washington and subsequently shipped those billboards to KSTP in Minnesota. All of Adtronics's subsequent contacts with Minnesota were a result of that transaction.

 When, as here, a nonresident has had few contacts with Minnesota, the nature and quality of those contacts become dispositive. *Marquette Nat'l Bank*, 270 N.W.2d at 295; *Maiers Lumber & Supply, Inc. v. Chancey Trailers*, 354 N.W.2d 585, 587 (Minn.App.1984). In evaluating the nature and quality of a contact, this court must ascertain whether appellant has purposefully availed itself of the benefits and protection of Minnesota law. *Dent–Air*, 332 N.W.2d at 907. The question is whether appellant had "fair warning" of being sued in Minnesota. *Real Properties, Inc. v. Mission Ins. Co.*, 427 N.W.2d 665, 668 (Minn.1988) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)).

Accepting all of KSTP's allegations as true, Adtronics's contacts with Minnesota consisted of: (1) shipping the billboards to KSTP at Specialized's request; (2) either sending or hiring a technician to attempt to repair the alleged faulty billboards after their arrival in Minnesota; (3) hand-delivering a replacement central processing unit for one of the billboards to Specialized with the knowledge that it would be forwarded to KSTP; (4) agreeing to KSTP's hiring of an independent consultant to examine the faulty billboards; and (5) mailing schematic drawings directly to KSTP for use by the independent consultant. Additionally, in support of its claim that Adtronics has purposefully availed itself of the benefits of doing business throughout the United States, including Minnesota, KSTP asserts that since 1998, Adtronics

has advertised nationally and held itself out as offering goods and services nationwide by operating a web site and participating in national trade shows. The district court, however, properly deemed these activities irrelevant for purposes of assessing whether personal jurisdiction exists for the events giving rise to this lawsuit, all of which occurred in 1995.

 Adtronics's act of shipping the billboards to Minnesota at Specialized's request and expense, without more, is not sufficient to justify Minnesota's exercise of personal jurisdiction. Personal jurisdiction does not generally exist when a nonresident defendant makes a single, isolated sale of its goods in the forum state, especially where the sale occurs through an intermediary distributor. *See, e.g., In re Minnesota Asbestos Litigation*, 552 N.W.2d 242, 247 (Minn.1996); *Johnson Bros. Corp. v. Arrowhead Co.*, 459 N.W.2d 160, 164–65 (Minn.App.1990). An isolated sale is especially unlikely to create personal jurisdiction if the nonresident has not targeted the forum state in a marketing campaign, either directly or indirectly, and has not placed its goods in the "stream of commerce" in a manner that makes sales in the forum state foreseeable. *Welsh v. Takekawa Iron Works Co.*, 529 N.W.2d 471, 474 (Minn.App.1995).

 A crucial factor in determining whether a single sale suffices to justify personal jurisdiction is whether the nonresident in some way solicited the sale or actively engaged in negotiating its terms. In other words, where a nonresident defendant is an "aggressor" in the transaction, it is more likely to have purposefully availed itself of the forum state's benefits and protection, so that personal jurisdiction is appropriate. *Marquette Nat'l Bank*, 270 N.W.2d at 296; *Hardrives, Inc.*, 307 Minn. at 295, 240 N.W.2d at 817; *Trident Enter. Int'l, Inc. v. Kemp & George, Inc.*, 502 N.W.2d 411, 415–16 (Minn.App. 1993).

Here, Adtronics neither solicited the initial sale of a billboard to KSTP nor otherwise marketed its products in Minnesota. Adtronics played no role in the initial transaction with KSTP or in KSTP's decision to convert its rental agreement to an outright purchase. The record does not reflect that Adtronics ever directly sold a single billboard in Minnesota. Specialized, a Washington corporation, contracted with Adtronics for the sale of a billboard to Specialized. When Specialized placed its order, Adtronics did not know that the billboards were destined for Minnesota, but was told that Specialized would reveal the shipping destination later.

KSTP argues that Adtronics had "fair warning" that it might be subject to suit in Minnesota simply because it had actual knowledge that it had delivered goods to the state, and because it had subsequent dealings here related to those particular goods. We disagree. We have previously held that the mere direct shipment of goods to the state does not constitute the "purposeful availment" necessary to justify personal jurisdiction. *See, e.g., Maiers Lumber & Supply*, 354 N.W.2d at 586.

We recognize that in certain circumstances, the delivery of goods through others can be sufficient to justify the exercise of personal jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). But in *Asahi Metal Ind. v. Superior Ct. of Cal.*, the Supreme Court clarified that the mere awareness that one's goods may end up in the forum state is not enough to justify personal jurisdiction: "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi Metal Ind. v. Superior Ct. of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). Moreover, in *Burger King v. Rudzewicz*, the Supreme Court clarified that "[j]urisdiction is proper * * * where the contacts proximately result from actions by the defendant *himself* that create

a 'substantial connection' with the forum State." 471 U.S. at 475, 105 S.Ct. at 2183–84 (quotation omitted).

Adtronics contends that because all of its subsequent contacts with KSTP flowed directly from its initial sale of the billboards to Specialized, they cannot be treated as separate, additional contacts for purposes of justifying personal jurisdiction. We agree. All of Adtronics's contacts with Minnesota occurred as a direct and proximate result of its sale of billboards to Specialized in Washington. Absent that initial sale, Adtronics would not have shipped the billboards to Minnesota, or made efforts to repair or replace the billboards' parts, or shipped schematic drawings to the independent consultant hired by KSTP.

Moreover, it would be inappropriate to treat Adtronics's subsequent contacts with Minnesota as a basis for exerting personal jurisdiction when those contacts occurred solely as part of an effort to settle a dispute. As we noted in *In re Shipowners Litigation*, 361 N.W.2d 112, 115 (Minn. App.1985), attaching personal jurisdiction on that basis "would amount to a form of civil entrapment not contemplated in law." If Adtronics's shipment of billboards purchased by Specialized is insufficient to establish personal jurisdiction, Adtronics should not be subject to personal jurisdiction because of its efforts to resolve the problems associated with its billboards. The Fourth Circuit has noted:

> If a party's slightest gesture of accommodation were to impose personal jurisdiction, commercial dealings would soon turn unobliging and brusque. * * * Concepts of *in personam* jurisdiction should not be structured to manufacture minimum contacts from every amenable act.

*Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1129 (4th Cir.1986).

In light of our decision, it is unnecessary to address the remaining factors in the five-part analysis. The final three factors cannot support jurisdiction where neither

the quantity nor quality of contacts demonstrates that a defendant purposefully availed itself of the benefits of the forum state. *Welsh*, 529 N.W.2d at 475. In addition, we need not address the district court's determination that even if Minnesota had personal jurisdiction over Adtronics, KSTP failed to state a claim upon which relief could be granted because it had no remedy available under the United Nations Convention on Contracts for the Sale of International Goods.

## DECISION

The district court correctly granted Adtronics's motion to dismiss for lack of personal jurisdiction. Adtronics did not have sufficient minimum contacts with Minnesota to satisfy due process requirements where its contacts consisted of an isolated shipment of goods and subsequent efforts to resolve problems associated with those particular goods.

**Affirmed.**