Genna L. CHRISTIAN f/k/a Genna L. Picard, Appellant,

v.

Judith M. BIRCH, Respondent.

No. A08–0312.

Court of Appeals of Minnesota.

March 24, 2009.

Parrish J. Jones, Mitchell A. Routh, Knudson, Gee & Torvinen, S.C., Superior, WI, for appellant.

Shari L. Lowden, Bakken, Robinson & Grove, Golden Valley, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; LARKIN, Judge; and STAUBER, Judge.

## OPINION

LARKIN, Judge.

Appellant challenges the district court's award of summary judgment, arguing that the district court erred in its determination that (1) Wisconsin's statute of limitations governs the underlying lawsuit and bars appellant's claims as untimely and (2) Minnesota lacks personal jurisdiction over respondent. Because Minnesota's statute of limitations governs the underlying lawsuit, and because Minnesota may exercise personal jurisdiction over respondent consistent with federal due process, we reverse and remand.

## FACTS

For the purpose of the district court's summary judgment award, the relevant facts are undisputed. On January 9, 2004, a vehicle driven by respondent Judith M. Birch collided head-on with a vehicle driven by appellant Genna L. Christian. The collision occurred on the Blatnik Bridge, which spans the St. Louis River between Superior, Wisconsin and Duluth. Christian was driving toward Wisconsin; Birch was driving toward Minnesota, but in the Wisconsin-bound lane. Birch was intoxicated. According to Christian's uncontroverted affidavit, "The accident occurred only feet from what is commonly referred to as the 'arch' or center of the bridge. Said accident was directly above the St. Louis [R]iver."

Minnesota emergency vehicles responded to the collision scene and transported Christian to a medical facility in Minnesota, where she received medical care. Wisconsin police officers also responded to the scene. The Wisconsin officers arrested Birch for driving while intoxicated. Criminal charges were subsequently filed against Birch in Wisconsin, and she plead-

ed guilty to a charge of causing injury by intoxicated use of a motor vehicle.

Both Christian and Birch are Wisconsin residents. Christian had a passenger in her vehicle at the time of the collision. Christian's passenger is a Minnesota resident. Birch does not own any property in Minnesota and is not employed in Minnesota.

Christian sued Birch in Minnesota, asserting a negligence claim. Christian served Birch at her home in Wisconsin sometime after May 18, 2007. Birch moved to dismiss under Minn. R. Civ. P. 12.02(a) (failure to state a claim upon which relief can be granted), (b) (lack of personal jurisdiction), and (f) (lack of subject-matter jurisdiction). Because the parties submitted matters outside of the pleadings for the district court's consideration, the district court treated Birch's motion as one for summary judgment under Minn. R. Civ. P. 56. The district court concluded that Minnesota has subject-matter jurisdiction, but determined that Wisconsin's three-year statute of limitations barred Christian's lawsuit and that Christian had therefore failed to state a claim for which relief could be granted. The district court also concluded that Minnesota lacked personal jurisdiction over Birch. The district court granted summary judgment for Birch on both grounds. This appeal follows.

## ISSUES

I. Did the district court err in its choice-of-law analysis by failing to consider and determine whether the relevant conflicting laws were procedural or substantive?

II. Did the district court err by concluding that it lacked personal jurisdiction over respondent?

## ANALYSIS

On appeal from summary judgment, an appellate court determines (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *Olmanson v. LeSueur County*, 693 N.W.2d 876, 879 (Minn.2005). When summary judgment is granted based on application of the law to undisputed facts, as is the case here, the result is a legal conclusion that we review de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn. 1998).

### I.

■ We first consider whether the district court erred by determining that Wisconsin's statute of limitations governs Christian's lawsuit. The district court's determination was based on a choice-of-law analysis. When a party asserts that a case brought in Minnesota may have a significant relationship to more than one state, the court must consider whether there is a choice-of-law issue. *See* William M. Richman & William L. Reynolds, *Understanding Conflict of Laws* § 1(c) (3rd ed.2002) (stating that "[w]henever a legal problem involves incidents or issues concerning more than one state, a court must determine which state's legal rules should control"). "Where a conflict of law question has not been raised, Minnesota law will govern." *Miller v. A.N. Webber, Inc.*, 484 N.W.2d 420, 422 (Minn.App.1992), *review denied* (Minn. June 10, 1992). Christian argues that a choice-of-law analysis was inappropriate, and that Minnesota law should automatically apply, because Minnesota has concurrent jurisdiction over the lawsuit.

■ Minnesota courts have concurrent subject-matter jurisdiction over claims arising from events that occur on boundary waters. Minn.Stat. § 484.02

(2006); *Opsahl v. Judd*, 30 Minn. 126, 129, 14 N.W. 575, 576 (1883). Minnesota courts also have concurrent jurisdiction over events that occur on bridges spanning boundary waters. *State v. George*, 60 Minn. 503, 505, 63 N.W. 100, 100–01 (1895) (holding that Minnesota can exercise criminal jurisdiction over an offense that occurred on a bridge between Wisconsin and Minnesota based on Minnesota's concurrent jurisdiction over bordering waters). Because the collision that underlies this lawsuit occurred on the Blatnik Bridge, which spans the St. Louis River between Minnesota and Wisconsin, on a portion of the bridge that is over the St. Louis River, Minnesota has concurrent jurisdiction over claims arising from the collision.

But Wisconsin also has concurrent jurisdiction over the lawsuit. Wis. Stat. § 1.01 (2007) ("The sovereignty and jurisdiction of this state extend to all places within the boundaries declared in article II of the constitution."); *see also* Wis. Const. art. II, § 1 (adopting territorial boundaries of the State of Wisconsin). Accordingly, the case has a significant relationship to Wisconsin and a choice-of-law issue arises. Birch raised the choice-of-law issue in summary-judgment proceedings before the district court, and the district court properly considered whether the Minnesota or Wisconsin statute of limitations governs this case. The district court's resolution of the choice-of-law issue is a question of law, which this court reviews de novo. *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 4 (Minn.App.2003), *review denied* (Minn. Dec. 16, 2003).

The first step in a choice-of-law analysis is to consider whether there is a conflict between the legal rules. *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn.1994). A conflict exists if choosing the law of one state over the law of another state would be "outcome determina-

tive." *Schumacher v. Schumacher*, 676 N.W.2d 685, 689 (Minn.App.2004) (quoting *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 590 N.W.2d 670, 672 (Minn.App. 1999)). The district court correctly determined that there was an outcome-determinative conflict between the Minnesota and Wisconsin statutes of limitations. Minnesota has a six-year statute of limitations for negligence actions. Minn.Stat. § 541.05 (2006). Wisconsin has a three-year statute of limitations. Wis. Stat. § 893.54 (2005–06). The collision occurred on January 9, 2004, and the complaint was not personally served on Birch until after May 18, 2007. Christian's claims are time-barred under Wisconsin's statute of limitations.

The second step in a choice-of-law analysis is to consider whether each state's statute may be constitutionally applied. *Jepson*, 513 N.W.2d at 469. In explaining this second step, the supreme court stated, "[f]or a State's *substantive law* to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* (quotation omitted) (emphasis added).

Third, if both states' substantive laws can be constitutionally applied, the district court then analyzes five choice-influencing factors to determine which state's law governs: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Jepson*, 513 N.W.2d at 470 (citing *Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973)).

But the second and third steps in the choice-of-law analysis apply only if the conflicting rules of law are substantive rather than procedural. *Danielson*, 670 N.W.2d at 5. The Minnesota Supreme Court has unequivocally held that "the *Milkovich* analysis should not be extended to conflicts of procedure" based on "the almost universal rule that matters of procedure and remedies [are] governed by the law of the forum state." *Davis v. Furlong*, 328 N.W.2d 150, 153 (Minn.1983).

 Minnesota courts have consistently recognized the distinction between procedural and substantive law in choice-of-law analysis.

Traditionally when a conflict-of-law issue arises, the preliminary step is to decide whether the question is substantive or procedural. If the matter is one of substantive law, Minnesota applies a multi-step choice-of-law analysis, which includes application of five choice-influencing considerations, to determine which state's law applies.... On the other hand, if the matter is one of procedural law, Minnesota follows the almost universal rule that matters of procedure and remedies [are] governed by the law of the forum state.

*Danielson*, 670 N.W.2d at 5 (citations and quotation omitted); *see also Schumacher*, 676 N.W.2d at 689–90 (proceeding from a determination of whether there is a conflict to an analysis of whether the law is procedural or substantive).

The parties here each rely on *Danielson*, which involved a choice-of-law analysis concerning whether to apply the Minnesota, Texas, or Arizona statute of limitations to a claim brought in Minnesota, arising out of an injury that occurred in Arizona, allegedly caused by a product purchased in Texas. *Danielson*, 670 N.W.2d at 4. Christian argues that the district court erred by failing to consider and determine whether Minnesota's statute of limitations is procedural or substantive consistent with our analysis in *Danielson*. *See id.* at 4–6. Birch argues that the district court did not err because *Danielson* obviated the need to determine whether a statute of limitations is procedural or substantive and recognized that statutes of limitations are substantive. *See id.* at 6.

 Birch misinterprets *Danielson*. In *Danielson*, we explicitly recognized that in a choice-of-law analysis, we must first determine "whether the question is substantive or procedural." *Id.* at 5. After considering Minnesota caselaw, we held that Minnesota's statute of limitations is procedural and that the Minnesota statute of limitations therefore governed. *Id.* at 5–6. But we also stated, "it may be inappropriate to use the procedural classification" and proceeded to engage in the substantive *Milkovich* analysis. *Id.* at 6. After conducting both analyses, we held that Minnesota's statute of limitations applied both under the procedural-versus-substantive analysis and under the *Milkovich* analysis. *Id.* at 9. But *Danielson* did not hold that the procedural-versus-substantive determination need not be made in a choice-of-law analysis. To the contrary, we recognized that statutes of limitations are procedural and that the law of the forum state governs procedural issues. *Id.* at 6. We simply justified our holding under the *Milkovich* analysis, in addition to the procedural-substantive distinction. *Id.* at 9.

 The appellate courts have consistently held that statutes of limitations are procedural. *Kennecott Holdings Corp. v. Liberty Mut. Ins. Co.*, 578 N.W.2d 358, 361 n. 7 (Minn.1998) (noting that "we have consistently regarded statutes of limitation as primarily procedural laws"); *City of Willmar v. Short–Elliott–Hendrickson,*

*Inc.*, 512 N.W.2d 872, 875 (Minn.1994) (describing the statute of limitations as a "procedural device" in an indemnity case); *Calder v. City of Crystal*, 318 N.W.2d 838, 844 (Minn.1982) (same); *Klimmek v. Indep. Sch. Dist. No. 487*, 299 N.W.2d 501, 502 (Minn.1980) ("A statute of limitation [in a worker's-compensation case] is not a matter of substantive right but of remedy." (quotation omitted)). Statutes of limitations relate to the remedy and are generally deemed procedural for the purpose of conflicts-of-law analysis in Minnesota courts. *See, e.g., Am. Mut. Liab. Ins. Co. v. Reed Cleaners*, 265 Minn. 503, 506 n. 1, 122 N.W.2d 178, 180 n. 1 (1963); *In re Daniel's Estate*, 208 Minn. 420, 429, 294 N.W. 465, 469 (1940); *Danielson*, 670 N.W.2d at 6; *U.S. Leasing Corp. v. Biba Info. Processing Servs., Inc.*, 436 N.W.2d 823, 825–26 (Minn.App.1989), *review denied* (Minn. May 24, 1989).

While the general rule is that statutes of limitations are procedural for choice-of-law purposes, Minnesota courts have recognized an exception to that general rule. In *Danielson*, this court stated that "[a] limitation period is substantive when it applies to a right created by statute, as opposed to a right recognized at common law." 670 N.W.2d at 6 n. 2. The limitations period is substantive if it relates to a statutory right because "the limitation period [acts as] a condition of the right rather than as an actual statute of limitations." *Id.* But because Christian's complaint seeks only common-law relief for negligence, the exception does not apply in this case.

The district court erred in its choice-of-law analysis by failing to consider and determine whether the conflicting statutes of limitations were procedural or substantive. Because statutes of limitations are procedural, there was, and is, no need to engage in a substantive choice-of-law analysis utilizing the *Milkovich* choice-influencing factors. "[M]atters of procedure and remedies [are] governed by the law of the forum state." Davis, 328 N.W.2d at 153. Minnesota's statute of limitations governs this lawsuit. *See Danielson*, 670 N.W.2d at 5 (stating that the law of the forum governs procedural issues).

## II.

We next consider whether the district court erred by determining that it lacked personal jurisdiction over Birch. Whether personal jurisdiction exists is a question of law, which we review de novo. *V.H. v. Estate of Birnbaum*, 543 N.W.2d 649, 653 (Minn.1996). Once jurisdiction has been challenged by a defendant, the burden is on plaintiff to prove a factual basis that establishes personal jurisdiction. *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 n. 1 (Minn.1983). "At the pretrial stage, however, the plaintiff's allegations and supporting evidence [regarding personal jurisdiction] are to be taken as true." *Id.* (citing *Hardrives, Inc. v. City of LaCrosse, Wis.*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976)). In doubtful cases, courts should resolve the jurisdictional question in favor of retaining jurisdiction. *Hardrives*, 307 Minn. at 296, 240 N.W.2d at 818.

Minnesota courts can assert personal jurisdiction over a nonresident individual if that individual

(1) owns, uses, or possesses any real or personal property situated in this state; or

(2) transacts any business within the state; or

(3) commits any act in Minnesota causing injury or property damage; or

(4) commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(i) Minnesota has no substantial interest in providing a forum; or

(ii) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

Minn.Stat. § 543.19, subd. 1 (2008) [1].

██ Minn.Stat. § 543.19 affords Minnesota courts personal jurisdiction over a defendant to the full extent of federal due process. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn.1992). Due process requires that the defendant have "certain minimum contacts" with the forum state and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Burnham v.Super. Ct. of Cal.*, 495 U.S. 604, 618, 110 S.Ct. 2105, 2114, 109 L.Ed.2d 631 (1990) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

██ Personal jurisdiction over a nonresident defendant may be found generally or specifically. General personal jurisdiction exists when a nonresident defendant's contacts with the forum state are so substantial and are of such a continuous and systematic nature that the state may assert jurisdiction over the defendant even for causes of action unrelated to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). Specific personal jurisdiction exists when the de-

fendant's contacts with the forum state are limited, yet connected with the plaintiff's claim such that the claim arises out of or relates to the defendant's contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales*, 466 U.S. at 414, 104 S.Ct. at 1872; *Griffis v. Luban*, 646 N.W.2d 527, 532 (Minn.2002).

The district court concluded that it lacked both general and specific personal jurisdiction over Birch. Christian challenges the district court's determination that specific personal jurisdiction is lacking. Christian contends that the district court could exercise specific personal jurisdiction over Birch because the collision occurred in an area where Minnesota has concurrent jurisdiction. We agree.

The district court's decision that it lacked personal jurisdiction was based on the unsupported conclusion that the collision occurred in Wisconsin, not in Minnesota. The district court based its decision upon the location of the collision in relation to what the parties and the district court referred to as a "white line" on the bridge. The district court treated this line as a boundary between Minnesota and Wisconsin. But there is no evidence in the record, and we were not cited any legal authority, to support a conclusion that the "white line" is a legally recognized boundary between Minnesota and Wisconsin. And, as discussed in section I of this opinion, there is no dispute that the collision occurred in an area where Minnesota has concurrent jurisdiction. Minn.Stat. § 484.02; *George*, 60 Minn. at 505, 63 N.W. at 100–01.

██ Because the collision occurred in an area where Minnesota has concurrent

---

1. Because this lawsuit was filed in 2007, the statute of limitations as it appears in the 2006 volume of the Minnesota Statutes applies to this case. A 2008 amendment to this statute did not alter any language relevant to our decision here.

jurisdiction, section 543.19, subd. 1(3), is satisfied. Birch "commit[ed] an[ ] act in Minnesota causing injury or property damage." Minn.Stat. § 543.19, subd. 1(3). The exact location of the collision on the bridge is irrelevant, as long as it occurred over boundary waters. *See Opsahl*, 30 Minn. at 129, 14 N.W. at 576 (acknowledging that the event that gave rise to the claim occurred on the Wisconsin side of the channel, but that the jurisdiction of each state extends beyond the center point of the channel to the opposite shore); *see also Nielsen v. Oregon*, 212 U.S. 315, 320, 29 S.Ct. 383, 383, 53 L.Ed. 528 (1909) (stating concurrent jurisdiction avoids questions of whether acts occurred on one side or the other side of the exact boundary in a channel).

We also consider whether Minnesota's exercise of personal jurisdiction is consistent with federal due process. When determining whether a defendant has sufficient minimum contacts with the forum state to satisfy due process, courts use a five-factor test. *Vikse v. Flaby*, 316 N.W.2d 276, 282 (Minn.1982). An analysis of minimum contacts requires consideration of (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of those contacts to the cause of action, (4) the interest of the forum state, and (5) the convenience of the parties. *Id.* "The first three factors are the primary factors, with the last two deserving lesser consideration." *Dent–Air, Inc.*, 332 N.W.2d at 907.

With regard to the primary due-process factors (i.e., the quantity of contacts, the nature and quality of contacts, and the source and connection of those contacts to the cause of action), Birch's only recorded contact with Minnesota is her course of travel over the St. Louis River on the Blatnik Bridge. But Christian's cause of action arises out of, and directly relates to, Birch's course of travel on the Blatnik Bridge and the resulting motor-vehicle collision. Thus, the causal connection between Birch's single recorded contact with Minnesota and Christian's lawsuit is substantial. And "[e]ven a single, isolated transaction between a nonresident and a forum state may be sufficient to justify the exercise of personal jurisdiction." *KSTP FM, LLC v. Specialized Commc'n, Inc.*, 602 N.W.2d 919, 923 (Minn.App.1999).

"When, as here, a nonresident has had few contacts with Minnesota, the nature and quality of those contacts become dispositive. In evaluating the nature and quality of a contact, this court must ascertain whether appellant has purposefully availed itself of the benefits and protection of Minnesota law." *Id.* at 924 (citation omitted). By driving into an area where Minnesota exercises concurrent jurisdiction, Birch purposefully availed herself of the benefits and protection of Minnesota law. *See Green v. Wilson*, 455 Mich. 342, 364, 565 N.W.2d 813, 822 (1997) (concluding that "[b]y using Michigan's roads ..., [defendant] purposefully availed himself of the benefits and protections of Michigan law").

As to the secondary factors, Minnesota has an interest in providing a forum for those injured in this state. *See Jepson*, 513 N.W.2d at 472 (stating that Minnesota places great value in compensating tort victims); *Danielson*, 670 N.W.2d at 8 (stating that Minnesota's overriding interest is compensating tort victims). And there is no indication that it would be extensively inconvenient for Birch to defend Christian's claim in Minnesota. *See Schuler v. Meschke*, 435 N.W.2d 156, 161 (Minn.App. 1989) ("[u]nless the inconvenience to either party is extensive, this consideration is not dispositive"), *review denied* (Minn. Apr. 19, 1989). We conclude that Minnesota's ex-

ercise of personal jurisdiction over Birch does not offend traditional notions of fair play and substantial justice. The district court erred in its determination that it lacked personal jurisdiction.

█ Finally, Birch argues that Minnesota is not entitled to exercise its jurisdiction because Wisconsin previously exercised jurisdiction over Birch's criminal prosecution. But there is no indication that the district court was presented with and considered this argument. Therefore, the issue is not properly before us for review. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that a reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it). Even if we were to consider Birch's argument, the argument would fail.

█ Birch's argument is based on the first-to-file rule, which provides that when two courts have concurrent jurisdiction, the first to acquire jurisdiction generally has priority to decide the case. *See Minn. Mut. Life Ins. v. Anderson*, 410 N.W.2d 80, 82 (Minn.App.1987). When a district court exercises jurisdiction over a case, it has authority to determine all issues relevant to the case and may restrain the prosecution of other suits raising the same issues until a final judgment is issued. *Id.* at 81. However, this power is discretionary, and exercise of this power depends on similarities between the litigation. *Id.* "The parties must be the same; the issue must be the same; and resolution of the first action must be dispositive of the action to be enjoined." *Id.* at 81–82. The first-to-file rule has no application in this case. The parties and the issues are not identical, and resolution of the Wisconsin criminal case is not dispositive of Christian's civil-negligence action. Moreover, there is no indication that the Wis-

consin court that presided over Birch's criminal case seeks to restrain prosecution of Christian's lawsuit.

## DECISION

Because the Minnesota statute of limitations governs the underlying lawsuit, and because the district court's exercise of personal jurisdiction over Birch is authorized by statute and consistent with federal due process, we reverse summary judgment for Birch and remand for further proceedings.

**Reversed and remanded.**

MINGE, Judge (concurring specially).

I join the majority opinion except for part I, that classifies the choice of what state's general statute of limitations applies to a claim as a procedural matter and automatically applies the statute of the forum state. I would apply the choice-influencing-consideration analysis which is used to resolve conflicts of substantive law to determine the applicable statute of limitations. Because applying those choice-influencing considerations would produce the same result reached by the majority, I concur.

## A. Classification of Statute–of–Limitations Questions

As the majority notes, statute-of-limitations questions were traditionally deemed procedural and subject to the conflicts-of-law analysis applicable to procedural questions. For three primary reasons, I would use the choice-influencing considerations to resolve conflicts over statutes of limitations. First, as detailed in *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 5–6 (Minn.App.2003), *review denied* (Minn. Dec. 16, 2003), Minnesota caselaw on the subject is not uniform; statute-of-limitations questions in some cases have been

treated as procedural while, in other cases, have been subject to the choice-influencing considerations applicable to substantive questions.

Second, as noted in the comments to the Restatement (Second) of Conflict of Laws, this inconsistency in caselaw is not only not limited to Minnesota, but is national and is increasingly being resolved in favor of using the choice-influencing considerations to resolve statute-of-limitations questions:

> [Many courts] no longer characterize the issue of limitations as ipso facto procedural and hence governed by the law of the forum. Instead, the courts select the state whose law will be applied to the issue of limitations by a process essentially similar to that used in the case of other issues of choice of law.

Restatement (Second) of Conflict of Laws § 142 cmt. e (1988).

Third, statutes of limitations are ever more viewed as expressions of public policy. *See, e.g., Entzion v. Illinois Farmers Ins. Co.,* 675 N.W.2d 925, 928 (Minn.App. 2004). This general view of statutes of limitations as expressions of public policy has been reflected in the choice-of-law context. *See Danielson,* 670 N.W.2d at 6 (stating that we are "increasingly recognizing that the statute of limitations is outcome determinative, that it may be inappropriate to use the procedural classification, and that determining what statute of limitations is to be applied should be decided the same as substantive law conflicts generally") (citing Restatement (Second) of Conflict of Laws § 142 cmt. e (1988)).

Based on the foregoing and other considerations identified in *Danielson* and the Restatement, I would use the choice-influencing-consideration approach to determine the applicable statute of limitations.

## B. Application of Choice–Influencing–Consideration Analysis

In deciding conflicts of substantive law, Minnesota adopted the choice-influencing-consideration analysis in *Milkovich v. Saari,* 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973). The five choice-influencing considerations are (1) predictability of result; (2) maintenance of interstate order; (3) simplification of judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Jepson v. General Cas. Co. of Wisc.,* 513 N.W.2d 467, 470 (Minn.1994). These factors are intended to "prompt courts to carefully and critically consider each new fact situation and explain in a straight-forward manner their choice of law." *Id.* The choice-influencing factors provide a clear framework for determining which statute of limitations applies when the statute of limitations is outcome determinative.

### (1) Predictability of Result

This factor applies "primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Medtronic, Inc. v. Advanced Bionics Corp.,* 630 N.W.2d 438, 454 (Minn.App.2001) (citation omitted). The case before this panel is a tort claim. It arose out of a motor-vehicle accident, not a transaction in which the parties would consider the applicable state law. From a traditional planning perspective, this predictability factor does not favor either forum. *See Milkovich,* 295 Minn. at 161, 203 N.W.2d at 412 ("no one plans to have an accident, and, except for the remote possibility of forum shopping, this test is of little import in an automobile accident case."). However, at another level, attorneys must identify and comply with deadlines for filing a tort action. In this important sense, predictability of result in application of the statute of limita-

tions is important to attorneys who must commence claims on behalf of their clients in a timely manner. This need for predictability favors a consistent, easily applied rule. The traditional rule that treats general statutes of limitations as procedural and applies the law of the forum is predictable and in this special sense, favors use of Minnesota law.

### (2) Maintenance of Interstate Order

This factor addresses whether the application of Minnesota or Wisconsin law would manifest disrespect of either state or impede the interstate movement of people and goods. *Danielson,* 670 N.W.2d at 7. Because both forums have statutes of limitations and because application of one state's statute of limitations would disrespect the other, this factor is unavoidable and neutral. *See id.* at 8.

### (3) Simplification of Judicial Task

In the context of the application of a statute of limitations, the consideration of the simplification of the judicial task is often thought to be minor. Minnesota district courts are capable of applying either the Minnesota or Wisconsin statute of limitations. However, given the complexities and quirks in any state law, the forum has a modestly simpler task in applying its law. This gives a slight preference to use of Minnesota law by a Minnesota court.

### (4) Advancement of the Forum's Governmental Interests

The fourth factor involves inquiry into which "choice of law most advances a significant interest of the forum [state]." *Jepson,* 513 N.W.2d at 472. "This factor assures that Minnesota courts are not called upon to apply rules of law inconsistent with Minnesota's concept of fairness and equity." *Medtronic,* 630 N.W.2d at 455 (quotation omitted). In evaluating this factor, the court considers the public policy of the forum state. *Danielson,* 670 N.W.2d at 8.

As we discussed in *Danielson,* Minnesota has a strong interest in fair compensation of tort victims. *Id.* "We have even refused to apply our law when the law of another state would better serve to compensate a tort victim." *Jepson,* 513 N.W.2d at 472. Here, appellant Christian received medical care in Minnesota. This state has an interest that its healthcare providers be paid. This is promoted by applying the longer statute of limitations. Because Minnesota has the longer statute of limitations, this factor favors applying Minnesota law.

### (5) Application of the Better Rule of Law

The fifth and final factor, the application of the better rule of law, is addressed when the other factors are inconclusive. *Medtronic,* 630 N.W.2d at 455–56. In determining the better rule of law, this court looks to "the rule that made good socioeconomic sense for the time when the court speaks." *Jepson,* 513 N.W.2d at 473 (quotation omitted). Minnesota's policy of compensating tort victims advances the interest of avoiding victim reliance on public assistance, restoring injured parties to good health, compensating healthcare providers, and holding parties responsible for their conduct. A shorter statute of limitations would advance the interest of reducing liability exposure and preventing stale claims. Here, there is no claim Christian's claim is a surprise, that witnesses are not available, or that Birch is otherwise disadvantaged by the greater-than-three year delay in initiating the lawsuit. In this case, Minnesota's overriding interest in compensating tort victims appears to be the better rule in this case and this factor favors the application of the Minnesota statute of limitations.

In sum, the choice-influencing considerations favor application of Minnesota law. Because I agree that the district court

erred in applying the Wisconsin statute of limitations, I concur with the result. However, because our supreme court favors use of the choice-influencing consideration analysis and because of the shift to this choice-of-law approach, I would follow § 142 of the Restatement, which applies the choice-influencing consideration analysis to statute-of-limitations conflicts.