Louis E. KEMP, Superior Seafoods, Inc. and Quality Finer Foods, Inc., Plaintiffs,

v.

TYSON SEAFOOD GROUP, INC. and Tyson Foods, Inc., Defendants.

No. 5–96–173 (JRT/RLE).

United States District Court, D. Minnesota, Fifth Division.

May 5, 1998.

John Dennis Kelly, Mark D. Pilon, Hanft Fride O'Brien Harries Seelbar & Burns, Duluth, MN.

Joseph John Roby, Jr., Johnson Killen Thibodeau & Seiler, Duluth, MN, Ethan Horwitz, Eric A. Prager, Darby & Darby, New York City.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendants' Motion for a stay of the proceedings.

A Hearing on the Motion was conducted on January 8, 1998, at which time the Plaintiffs appeared by Mark D. Pilon, Esq., and the Defendants appeared by Joseph J. Roby, Esq. Following the Hearing, we requested that the parties supplement the Record and, upon the receipt of these supplemental submissions, we took the Motion under advisement. For reasons which follow, we grant the Motion.

### II. *Factual and Procedural Background*

The Plaintiff Louis Kemp ("Kemp") formerly was the sole shareholder in a company which manufactured seafood products, and which was known as "Kemp Foods." By means of a Stock Acquisition Agreement, on March 30, 1987, Kemp sold the entirety of his holdings in Kemp Foods to Oscar Mayer Foods Corporation ("Oscar Meyer"), but he retained a "right of first negotiation," which entitled him to a three-month period of exclusive negotiation, in the event that Oscar Mayer should seek to sell Kemp Foods, within the ten-year period following the execution of the Agreement.

For a consideration of $10,000, on August 22, 1991, Kemp transferred virtually all of his rights in the Stock Acquisition Agreement—including 95% of the "right of exclusive negotiation"—to the Plaintiff Superior Seafoods, Inc. ("Superior"). In addition, Kemp conveyed to Superior the right to make commercial use of the name "Louis Kemp." *Deposition of Louis E. Kemp,* at 41, 42, 480. Finally, Kemp also transferred to Superior all of his interest in certain legal claims.

Superior is a corporation which was created by Kemp's attorney, and is owned, in its entirety, by a trust, whose beneficiaries are Kemp's four children. Kemp does not own, direct, or operate Superior in any official capacity. According to Kemp, the properties that he transferred to Superior, as a part of the 1991 transaction, are the only properties that Superior has either owned, or held an interest in, since the corporation's founding. *Id.* at 36. While the Record is not entirely clear, the Defendant has offered evidence that the Plaintiff Quality Finer Foods, Inc. ("Quality") is a wholly-owned subsidiary of Superior, see, *January 6, 1998 Declaration of Carolyn A. Dye,* at ¶ 3, and the Plaintiffs have not controverted that showing. Quality was founded in 1995.

In December of 1991, Oscar Mayer decided to sell Kemp Foods which, by that time had, changed its name to Louis Kemp Seafood Company ("Kemp Seafood"). After six months of negotiations with both Kemp and the Defendant Tyson Foods, Inc. ("Tyson Foods"), Oscar Meyer sold Kemp Seafood to Tyson Foods. Thereafter, Oscar Mayer and Kraft Foods merged, causing all parties to refer to the merged enterprise as Kraft Foods ("Kraft"). In August of 1995, Kemp, Superior, and an entity named "A. Kemp Fisheries," sued Kraft, Tyson Foods, and two of Tyson's distributors, in a California State Court, alleging certain contract and tort claims arising from Oscar Mayer's asserted failure to negotiate in good faith, with Kemp, for the sale of Kemp Seafood. Tyson and its distributors prevailed on these claims by means of both a demurrer and a summary

judgment motion, and Kraft successfully moved for summary judgment on the tort claims. Both rulings are now the subject of a consolidated appeal to the California Court of Appeals and, as a consequence of these rulings, only breach of contract claims of Superior, and of Kemp, as against Kraft, remained extant in the California State Court proceeding.

On or about May 28, 1996, the Plaintiffs commenced this action in the Minnesota District Court for the Sixth Judicial District and, on June 14, 1996, the Defendants timely removed the action to this Court. In their Complaint, the Plaintiffs allege that they have produced, and have marketed, wild rice food products under the name "Louis Kemp." They further allege that Tyson, by its subsidiary, the Defendant Tyson Seafood Group, Inc. ("Tyson Seafood"), markets a seafood product known as "surimi" under the name "Louis Kemp," and that Tyson and Tyson Seafood have objected to the use, by the Plaintiffs, of the "Louis Kemp" name, in the marketing and production of the Plaintiffs' wild rice products. Accordingly, the Plaintiffs have asserted claims against the Defendants for tortious interference with a contract, and for unfair competition. As requested relief, they seek an award of monetary damages, and a declaration that they have the right to use the "Louis Kemp" name in the connection with the manufacture, production, marketing, sales and identification of any service, or product, other than surimi-based seafood products.

For their part, in their Amended Answer and Counterclaims, the Defendants deny any liability to the Plaintiffs, and they allege that the Plaintiffs' employment of the "Louis Kemp" name, in connection with their wild rice products, infringes upon the Defendants' registered trademarks for "Louis Kemp," and for the "Louis Kemp Seafood Co." As a consequence, the Defendants have served a series of Counterclaims against the Plaintiffs, which allege violations of the Federal Lanham Act, see, Title 15 U.S.C. § 1114, et seq., and its Minnesota statutory counterparts. See, Minnesota Statutes Sections 325D.09–16, 325D.43–48, and 325D.165. In addition, the Defendants have asserted State common law claims against the Plaintiffs for trademark infringement, and for unfair competition. As requested relief, the Defendants seek a declarations that the referenced trademarks are valid and enforceable, and that the Plaintiffs' use of the name "Louis Kemp," in connection with the Plaintiffs' wild rice products, illegally infringes upon those trademarks.

On April 16, 1997, after Tyson Foods and Kraft had obtained their summary dispositions in the California State proceedings, at the parties' request, the District Court, the Honorable John R. Tunheim presiding, entered an Order which stayed the bulk of the proceedings in this action. According to the terms of the District Court's Order, all of the issues raised by the parties' pleadings were stayed, except for the following:

5. Plaintiffs shall continue to seek in the present litigation a declaratory judgment that Tyson's right to exclude Plaintiffs from the use of LOUIS KEMP and LOUIS KEMP SEAFOOD CO. is limited to "surimi-based seafood products and such other seafood and fish accessory products within the natural zone of product line expansion" and that some or all of Plaintiffs are entitled to use the trademark LOUIS KEMP on and in connection with "seasoned wild rice, chicken wild rice soup, and wild rice with stir fried vegetables," as specified in answer to Defendants' Interrogatory No. 1.

6. Defendants shall continue to seek in the present litigation judgment that Plaintiffs' use the [sic] trademark LOUIS KEMP on and in connection with "seasoned wild rice, chicken wild rice soup, and wild rice with stir fried vegetables," constitutes infringement of Tyson's rights in the LOUIS KEMP and LOUIS KEMP SEAFOOD CO. trademarks.

Following the entry of the District Court's Stay Order, the case proceeded only on the claims delineated in paragraphs 5 and 6 above.

In November of 1996, Kemp filed for personal bankruptcy protection in the United States District Court for the Central District of California, but he failed to disclose this filing to his own litigation counsel, to the

defendants in the California State proceeding, and in this action, or to either of the Courts involved, until March of 1997. As a consequence of his bankruptcy filing, all of Kemp's nonexempt personal assets, including his claims in the California proceeding and in this action, became the property of the Bankruptcy Estate, under the administration of Bankruptcy Trustee Carolyn Dye ("Dye"). Shortly thereafter, Dye negotiated, and the Bankruptcy Court approved, a settlement of Kemp's claims in both this action, and in the proceedings before the California State Court.[1] Thus, Kemp is no longer a party to either of these proceedings, and Superior and Quality remain as the sole Plaintiffs in this action.

In recent months, Dye has become convinced that Kemp's 1991 asset transfer to Superior amounted to a fraudulent conveyance, which was made with the intent to hinder, delay, and defraud Kemp's creditors. In this regard, Dye underscores that this transfer of assets was accomplished at a time when Kemp was a defendant to a civil action, which had been commenced by the United States of America, and in which Kemp faced a potential exposure to civil liability in excess of fifteen million dollars. Dye also emphasizes that, among the assets transferred to Superior, were Kemp's rights to raise certain legal claims—including those which Superior has asserted in the California State action, and in this proceeding—which have already produced a civil judgment for Superior in the amount of $1,300,000, and which could result in an additional recovery, for Superior, in excess of $500,000. Moreover, Dye highlights Kemp's acknowledgment that Superior has only one employee, that it conducts no business other than to prosecute lawsuits on which Kemp "consults," and that Superior is wholly-owned by a trust whose sole beneficiaries are Kemp's four children. Lastly, Dye attaches significance to the fact that Kemp conveyed these substantial assets to Superior

for the relatively modest price of $10,000. *January 6, 1998 Declaration of Carolyn A. Dye,* at ¶¶ 3–6.

Accordingly, Dye advises that she will, forthwith, commence proceedings in the Bankruptcy Court to have the 1991 transfer of assets, from Kemp to Superior, set aside as a fraudulent conveyance. If Dye is successful in that effort, then the assets that Superior received in the 1991 transfer—including Superior's right to prosecute the claims which it advances in both this action, and in the California State proceeding—would revert through Kemp to the Bankruptcy Estate. In anticipation of the potential success of Dye's fraudulent transfer claim, Kraft and Dye have agreed to settle Superior's remaining California breach of contract claim, and this contingent settlement has been approved by the Bankruptcy Court.

Given these developments, Kraft and Tyson Foods have successfully moved the California Trial Court to stay the California action, and they have also prevailed upon the California Court of Appeals to stay its consideration of the consolidated appeal from the Trial Court's earlier dispositive rulings, pending the Bankruptcy Court's resolution of Dye's fraudulent transfer claim. Presently before us is the Defendant's Motion for the grant of similar relief—namely, that we stay all proceedings involving the remaining active claims in this action, until the Bankruptcy Court rules on the fraudulent transfer claim. The Plaintiffs oppose the Motion in all respects.

### III. *Discussion*

■ As a Federal District Court, we have the inherent power to stay the proceedings of an action, so as to control our docket, to conserve judicial resources, and to provide for the just determination of cases which pend before us. *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81

---

1. As we have explained in the text of this Order, given the California State Court's earlier rulings, the only remaining claim, which Kemp was still able to advance in the California State proceeding, was his claim for breach of contract. This contract claim was premised upon Kemp's remaining 5 percent interest in the "right of first negotiation," which had been reserved by Kemp, as part of the transaction that produced the Stock Acquisition Agreement between Kemp and Oscar Meyer. Therefore, upon the Bankruptcy Court's approval of this settlement, the only remaining California State Court claim is Superior's contract claim, which arises from its ownership of 95% of the "right of first negotiation."

L.Ed. 153 (1936); see also, *Lunde v. Helms,* 898 F.2d 1343, 1345 (8th Cir.1990), cert. denied, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 208 (1990); *Webb v. R. Rowland & Co., Inc.,* 800 F.2d 803, 808 (8th Cir.1986); *City of Bismarck v. Toltz, King, Duvall, Anderson and Associates, Inc.,* 767 F.2d 429, 433 (8th Cir.1985); *Contracting Northwest, Inc. v. City of Fredericksburg, Iowa,* 713 F.2d 382, 387 (8th Cir.1983). Here, we believe that each of these factors—but particularly the interests of judicial economy—commend a granting of the requested stay.

■ At the Hearing on the Motion, we advised the parties of what was, in our view, the paramount issue before us: Whether, independent of the 1991 asset transfer, Superior and Quality have any legal basis to litigate the only issue which presently pends before this Court and, specifically, whether Superior and Kemp have the right to use the name "Louis Kemp," in the production and marketing of their non-surimi based products. Since the Record before the Court, as it was developed at the time of the Hearing, did not allow an informed judgment on that issue, we requested further briefing, and a supplementation of the Record. Having closely reviewed the parties' supplemental submissions, we conclude that Superior and Quality's asserted entitlement, to the commercial use of the "Louis Kemp" name, derives solely from the asset transfer, in 1991, from Kemp to Superior.

Notably, Kemp has admitted that the right to use the "Louis Kemp" name was included amongst the assets which were transferred to Superior as part of the 1991 transfer. Indeed, he has attested to the fact that Superior holds no other assets, property or interests, other than those which were conveyed to Superior, by Kemp, as a part of the 1991 transaction. Notwithstanding an ample opportunity to do so, the Plaintiffs have offered nothing to rebut the Defendants' showing that Quality is a wholly-owned subsidiary of Superior and, therefore, that any right of Quality to employ the "Louis Kemp" mark, is possessed derivatively, by virtue of Superi-

or's own asserted entitlement to make use of the name.[2]

Since Superior and Quality's claim to the use of the "Louis Kemp" name is solely derived from the 1991 transfer, this entitlement, as well as the Plaintiffs' standing to litigate any remaining claims in this action, are rights which are inextricably tied to Dye's pending fraudulent conveyance claim in the Bankruptcy Court. Should Dye prove successful in her effort to set aside the 1991 transfer—and we conclude that she has presented a colorable showing of success on that claim—then all of the assets which were subject to that transfer, including the right of Superior and Quality to use the "Louis Kemp" mark, will revert to Dye, as the successor in interest to Kemp.

By operation of his Chapter 7 bankruptcy filing, Kemp has forfeited his standing to litigate any of the claims which are being advanced in this action, as the claims have become the property of the Bankruptcy Estate, which is represented by Dye, as the Bankruptcy Trustee. See, e.g., *Hunt v. Up North Plastics, Inc.,* 177 F.R.D. 449, 450, 1997 WL 851422 * 2 (D.Minn., December 2, 1997). As explained by the Court, in *Harris v. St. Louis University,* 114 B.R. 647, 648–49 (E.D.Mo.1990):

> The trustee in a case under Chapter 7 is the sole representative of the estate. 11 U.S.C. § 323(a); *Vreugdenhil v. Hoekstra,* 773 F.2d 213, 215 (8th Cir.1985). It is the trustee of the state who "has the capacity to sue and be sued." 11 U.S.C. § 323(h). "[A]fter appointment of a trustee, a Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed. Only the trustee, as representative of the estate, has the authority to prosecute and/or settle such causes of action." *Cain v. Hyatt,* 101 B.R. 440, 442 (E.D.Pa.1989) (citing *Bauer v. Commerce Union Bank,* 859 F.2d 438 (6th Cir.1988)), cert. denied, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989); *Jones v. Harrell,* 858 F.2d 667

---

**2.** As we have noted elsewhere, Kemp has attested that he transferred, to Superior, the right to commercially use the "Louis Kemp" name as part of the 1991 transfer, which occurred some three to four years before Quality was incorporated in 1995.

(11th Cir.1988); *In re Tvorik,* 83 B.R. 450, 456 (Bkrptcy.W.D.Mich.1988).

\* \* \* \* \* \*

The debtor may regain standing to pursue a cause of action if the cause of action is abandoned by the trustee. Under 11 U.S.C. § 554(a) the trustee may abandon property which is burdensome to the estate or that is of inconsequential value to the estate. Under 11 U.S.C. § 554(b) the bankruptcy court may order the trustee to abandon such property at the request of a party.

Accordingly, "upon the filing of a Chapter 7 bankruptcy, 'the bankruptcy trustee steps into the shoes of the debtor for purposes of asserting or maintaining the debtor's causes of action.'" *Hunt v. Up North Plastics, Inc.,* 451, 1997 WL 851422 \*2, quoting, *Richardson v. United Parcel Service,* 195 B.R. 737, 739 (E.D.Mo.1996); see also, *In re Ozark Restaurant Equipment Co., Inc.,* 816 F.2d 1222, 1225 (8th Cir.1987) ("[I]t is clear that causes of action belonging to the debtor at the commencement of the case are included in the definition of property of the estate;" and "[a]ny of these actions that are unresolved at the time of filing then pass to the trustee as representative of the estate, who has the responsibility under Section 704(1) of asserting them whenever necessary for collection or preservation of the estate."), cert. denied, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987).

■ As a consequence, once the Chapter 7 Petition was filed, only Dye, as the Bankruptcy Trustee, has the requisite standing, as a real party in interest, to prosecute any legal claims which are encompassed within Kemp's Bankruptcy Estate. *Hunt v. Up North Plastics, Inc.,* supra at 451, 1997 WL 851422 \*2. Therefore, if Dye is successful in setting aside the 1991 transfer, she, rather than Superior or Quality, will have the legal capacity to continue the prosecution of any active claims in this proceeding. Since we have already concluded that Dye has presented a colorable showing of success on the merits of her fraudulent transfer action, we agree with the California State Courts which have already faced this issue that a stay in this action—pending the resolution of the

fraudulent transfer claim in the Bankruptcy Court—would be appropriate. Cf., *Hunt v. Up North Plastics, Inc.,* supra at 452, 1997 WL 851422 \*3 (granting Motion to stay discovery in ongoing securities action, pending Bankruptcy Trustee's formal appearance before Court, as "real party in interest").

In sum, we grant the Defendants' Motion to stay the remaining claims in this action but, in order to assure that this action does not languish in an indefinite Stay, unless the parties draw our attention to the file, by Motion or otherwise, then, **within sixty (60) days of the date of this Order,** counsel of Record shall arrange for a telephone conference call, in order that we may jointly address the then current status of the matter.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendants' Motion for a Stay of Proceedings [Docket No. 32] is GRANTED.

2. That, in the event that no action is taken in this file **within sixty (60) days of the date of this Order,** counsel of Record shall arrange for a conference telephone call with the Court, in order that the then current status of this matter may be jointly addressed.