# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3161

_____

Cynthia L. Roers

*Plaintiff - Appellant*

Alan J. Roers

*Plaintiff*

v.

Countrywide Home Loans, Inc.; Countrywide Bank, N.A.; LandSafe Appraisal
Services, Inc., a Minnesota corporation

*Defendants - Appellees*

_____

No. 12-3252

_____

Cynthia L. Roers

*Plaintiff*

Alan J. Roers

*Plaintiff - Appellant*

v.

Countrywide Home Loans, Inc.; Countrywide Bank, N.A.; LandSafe Appraisal Services, Inc., a Minnesota corporation

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 14, 2013
Filed: August 30, 2013

_____

Before LOKEN, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Cynthia and Alan Roers appeal the district court's grant of summary judgment in favor of Countrywide Home Loans, Countrywide Bank, Bank of America, and LandSafe Appraisal Services (collectively "Countrywide") on their claims of intentional and negligent misrepresentation, breach of fiduciary duty, and for rescission of contracts. We affirm the judgment of the district court with respect to the claims of misrepresentation and breach of fiduciary duty. On the Roerses' claims for rescission, we reverse and remand for further proceedings consistent with this opinion.

I

In July 2006, Alan and Cynthia Roers expressed interest in purchasing property (the "ranch") located in Minnetrista, Minnesota. The seller represented to the Roerses

that the ranch consisted of forty-five acres, divided into twenty-five acres in the rear, on which the house was located, and twenty acres in the front.

Unable to finance the purchase himself, Alan Roers worked with Countrywide representative Jodi Ennen to obtain a loan. Ennen discovered that Cynthia separately owned three parcels of property, two in Edina, Minnesota, and one in Minnetrista, Minnesota, all of which were encompassed by a prenuptial agreement. After repeatedly expressing to Ennen her reluctance to encumber her own properties, Cynthia ultimately agreed to mortgage the three properties to secure the necessary funding for the ranch. The two properties in Edina were encumbered in the amount of $350,000 each, and the property in Minnetrista was encumbered in the amount of $446,800, for a total of $1,146,800. The Roerses aver Countrywide assured them the front twenty acres of the ranch could be subdivided and sold to pay off the mortgages on Cynthia's properties.

In the fall of 2006, in connection with the sale, Countrywide conducted two appraisals on the ranch through its subsidiary Landsafe. Both appraisals concluded the ranch consisted of just over forty-five acres of land, valued between $4.1 and $4.2 million. Alan Roers individually entered into a purchase agreement with the seller for $4.1 million and a mortgage agreement with Countrywide for $2,870,000, for a total of four mortgage agreements through Countrywide, valued collectively at $4,016,000.

Closing took place on December 29, 2006, at which the Roerses were represented by their then-attorney. The purchase was financed with loans on the ranch itself and on Cynthia's three non-marital properties. Consistent with the purchase agreement description, the mortgage on the ranch identified the mortgaged property as "20 County Road 20," located within Section 6, Township 117, Range 24, in Hennepin County. The Roerses began residing at the ranch shortly after closing.

-3-

In April 2007, Cynthia Roers noticed a "For Sale" sign on the front twenty acres of the ranch. The Roerses then learned that, contrary to their understanding, the purchase agreement had only transferred possession of the rear twenty-five acres of the ranch and made no provision for the front twenty acres. They sued the seller, the seller's realtor, and the real estate agency in state court alleging fraud, negligent misrepresentation, breach of fiduciary duty, and breach of contract. Ultimately, the parties reached a confidential settlement, and the seller still owns the front twenty acres of the ranch.

In 2009, the Roerses divorced. Alan continues to reside on the ranch but has fallen in arrears on his mortgage payments. Accordingly, Countrywide has initiated foreclosure proceedings on the ranch. Because the Roerses were unable to sell the front twenty acres of the ranch as they had expected, Cynthia's nonmarital properties remain encumbered and may also be foreclosed upon.

On July 26, 2010, Cynthia filed suit against Countrywide Home Loans, Countrywide Bank, and LandSafe, alleging claims of intentional and negligent misrepresentation, and seeking rescission of the mortgage agreements on her nonmarital properties based upon the parties' mutual mistake of fact. Alan separately filed suit against Bank of America[1] and LandSafe on October 10, 2010, asserting claims of negligent misrepresentation, breach of fiduciary duty, and seeking rescission of all four mortgage agreements. The district court consolidated both cases and granted summary judgment in favor of Countrywide on all claims. The Roerses each appeal.[2]

---

[1]Alan Roers refers to Bank of America and Countrywide interchangeably. In the interest of concision, both entities are referred to here as "Countrywide."

[2]These appeals were argued consecutively before our panel on June 14, 2013, and, in light of their significant factual and legal commonality, have now been consolidated for disposition.

## II

We review a grant of summary judgment de novo, applying the same standard as the district court. Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Summary judgment shall be awarded to a party if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When ruling on a summary judgment motion, a court must view the evidence "in the light most favorable to the nonmoving party." Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997) (citing F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997)).

### A. Rescission of Mortgages on the Nonmarital Properties

The Roerses first appeal the district court's grant of summary judgment in favor of Countrywide on their claims for rescission of the three mortgage agreements involving Cynthia's nonmarital properties. In cases involving a mutual mistake of fact, Minnesota courts have adopted the Restatement (Second) of Contracts § 152. See Winter v. Skoglund, 404 N.W.2d 786, 793 (Minn. 1987). Section 152(1) provides,

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake.

The Roerses argue each element is met in this case because (1) the parties were mutually mistaken in their belief that the entire ranch was being sold and financed; (2) the mistake was material to the parties' decision to enter into the mortgage agreements; and (3) the mistake so imbalanced the agreed upon exchange that they cannot fairly be required to carry it out.

### 1. Existence of a Mutual Mistake of Fact

The Roerses must first prove the existence of "a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made . . . ." Restatement (Second) of Contracts § 152(1) (1981). Both the Roerses and Countrywide admit they were mistaken as to the amount of land being sold and, therefore, financed, with the ranch at the time they entered into the mortgage agreements on Cynthia's nonmarital properties. Accordingly, the remaining issue is whether the amount of land being purchased was a basic assumption on which the mortgage agreements were made.

We are unpersuaded by Countrywide's assertion that mortgage agreements are purely financial in nature and are, therefore, merely an exchange of monetary promises wholly separate from the collateral they are intended to fund. Countrywide conducted two appraisals on the ranch to determine its value and the corresponding sum the Roerses would need to obtain for its purchase. We note the very act of appraising land prior to financing a mortgage suggests the metes and bounds of a property are a "basic assumption on which [a mortgage] contract [i]s made." See Restatement (Second) of Contracts § 152(1). Here, the appraisals identified a forty-five-acre parcel valued between $4.1 and $4.2 million. To reach the agreed-upon sum of $4.1 million, Cynthia agreed to encumber her nonmarital properties for a total of $1,146,800.

In other words, based on the *assumption* the Roerses were purchasing a forty-five-acre property, Countrywide made the *assumption* the Roerses would require $4.1 million in financing, and the parties entered into a trio of mortgage agreements to satisfy a portion of that debt. Countrywide cannot fairly argue the size and, consequently, the value of the ranch was not a basic assumption on which it and the Roerses relied in mortgaging her nonmarital properties. Accordingly, we conclude, at a minimum, a fact question exists as to whether the parties were operating under

-6-

a mutual mistake as to a basic assumption on which the mortgage agreements were made. See Aronovitch v. Levy, 56 N.W.2d 570, 575 (Minn. 1953) (noting existence of a mutual mistake is a question of fact for the fact finder's determination).

## 2. Materiality of the Mistake

Having established a mutual mistake of fact existed at the time the parties entered into the mortgage agreements, we next consider whether the mistake had "a material effect on the agreed exchange of performances . . . ." Id. For a mistake to be material, it must go to the "very nature of the property," rather than merely to its monetary value. Gartner v. Eikill, 319 N.W.2d 397, 399 (Minn. 1982); see also Sheng v. Starkey Labs., Inc., 117 F.3d 1081, 1084 (8th Cir. 1997) ("Before a misconception will render a contract voidable, it must be more th[a]n an error about the monetary value of the consideration; it must go to the very nature of the deal."). Countrywide argues the parties' mistake as to the ranch's acreage relates only to the property's value and was, thus, immaterial with respect to the financing agreement. We disagree.

Acreage undoubtedly affects the monetary value of a land sale and any contingent finance agreements. It is illogical, however, to argue that because a mistake affects the value of the bargain, it is rendered immaterial. Indeed, it is difficult to conceive of a mistake which would have no effect on value but could nevertheless be construed as material. The mistake in this case is not one in which the parties erroneously believed the ranch was worth $4.1 million only to discover later that it is not. Rather, the parties assumed the Roerses were purchasing a tract of land substantially distinct from the property they ultimately acquired (i.e., a twenty-five-acre lot versus a forty-five-acre lot). Surely, this is a mistake as to the "very nature of the property," whatever effect it may ultimately have on the property's value.

Moreover, the Roerses aver they would not have entered into the mortgage agreements but for Countrywide's assurance they could subdivide and sell the front twenty acres of the ranch. Because the Roerses received approximately one half of the land they anticipated and Cynthia's properties accounted for less than one half of the ultimate purchase price, it is conceivable Cynthia would never have mortgaged her three properties were the parties not laboring under their mistaken assumption with respect to the ranch. Construing the facts, as we must, in the Roerses' favor, we conclude a fact question remains as to whether the ranch's acreage and corresponding value were material to the finance agreements for Cynthia's separate properties.

### 3. Adversely Affected Party

The district court ultimately held "[e]ven if the amount of land was a basic assumption on which the exchange was based, . . . Alan and Cynthia are not entitled to relief under the doctrine of mutual mistake because Alan and Cynthia are not the adversely affected parties." It reasoned "[f]or a party to show it is adversely affected, it must demonstrate 'the exchange is not only less desirable to him but is also more advantageous to the other party.'" Restatement (Second) of Contracts § 152 cmt. c (1981). Because the Roerses received the financing they sought, whereas Countrywide did not receive the forty-five-acre ranch it anticipated as a security interest, the district court determined Countrywide had been the truly adversely affected party. We find this reasoning misguided.[3]

---

[3]Countrywide argues the Roerses failed to assign error to the district court's finding that they were not the adversely affected party and have thus waived the error. We disagree. The Roerses' briefs assert the parties' mistake is so imbalanced that they cannot fairly be required to carry out their agreement. This argument is clearly derived from comment (c) of § 152(1), on which the district court relied in its analysis regarding the adversely affected party. Moreover, by arguing that enforcement of the agreement would be unfair to them, the Roerses inherently label themselves the adversely affected party.

Section 152(1) suggests an "adversely affected party" may seek rescission of a contract on the grounds of a mutual mistake. Comment (c) to that section provides guidance on identifying an adversely affected party:

> He must show that the resulting imbalance in the agreed exchange is so severe that he can not fairly be required to carry it out. Ordinarily he will be able to do this by showing that the exchange is not only less desirable to him but is also more advantageous to the other party. Sometimes this is so because the adversely affected party will give, and the other party will receive, something more than they supposed. Sometimes this is so because the other party will give, and the adversely affected party will receive, something less than they supposed. In such cases the materiality of the effect on the agreed exchange will be determined by the overall impact on both parties. In exceptional cases the adversely affected party may be able to show that the effect on the agreed exchange has been material simply on the ground that the exchange has become less desirable for him, even though there has been no effect on the other party. . . . The standard of materiality here . . . is a flexible one to be applied in the light of all the circumstances.

When read in context, it appears the district court's analysis misstates the standard set forth in comment (c). To identify themselves as adversely affected, the Roerses are not required to demonstrate the exchange is more advantageous to Countrywide, as the district court suggests. Rather, comment (c) prescribes a totality-of-the-circumstances approach, in which either or both parties may be adversely affected by a mutual mistake. As an aside, it is difficult to conceive of a scenario in which a party would seek to rescind a contract by which she is not adversely affected. We find no textual or logical support for the district court's zero-sum treatment of this issue.

Just as Countrywide received a lesser security interest in the ranch, the Roerses received a lesser piece of collateral to offer in exchange for over four million dollars in loans. Accordingly, they stand to lose not only the ranch, but also three separate properties valued at approximately $1.15 million. In light of all the circumstances,

-9-

we acknowledge the adverse effects to Countrywide if it cannot recoup its losses. However, the district court erred in concluding as a matter of law that the Roerses are not also adversely affected parties in this case. Whether the Roerses have been adversely affected and are, therefore, eligible to seek rescission of the mortgage agreements remains an open question to be resolved by a fact finder.

## B.  Negligent Misrepresentation & Breach of Fiduciary Duty

Alan next argues the district court erred in granting summary judgment in favor of Countrywide on his claims of negligent misrepresentation and breach of fiduciary duty. Both claims are premised on Jodi Ennen's representation that the Roerses would be able to subdivide and sell the front twenty acres of the ranch to satisfy the debts on Cynthia's nonmarital properties. The district court concluded both claims failed because Alan could not show Ennen owed the Roerses a duty of care. See Florenzano v. Olson, 387 N.W.2d 168, 173-74 (Minn. 1986) (a claim for negligent misrepresentation requires a showing of negligence on the part of the misrepresenter); Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011) ("To recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, (4) that the breach of the duty of care was a proximate cause of the injury."). We agree.

The general rule in Minnesota is that "lenders bear no fiduciary duty to borrowers." Ming'ate v. Bank of Am., N.A., No. 11-1787, 2011 WL 4590431, at *5 (D. Minn. Sept. 30, 2011) (applying Minnesota law). Here, however, Alan argues Ennen fostered a "special relationship" with the Roerses beyond a typical lender-borrower relationship by offering to "quarterback" the deal and inducing Cynthia's reluctant agreement to mortgage her nonmarital properties. Minnesota courts have recognized a special relationship giving rise to a fiduciary relationship between a bank and its customers when (1) the bank knows or has reason to know the customer is placing trust and confidence in the bank and relying on the bank to counsel and

-10-

inform him, see Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 623 (Minn. 1972); (2) confidence is placed on the bank which results in superiority and influence over the customer, see Midland Nat'l Bank of Minneapolis v. Perranoski, 299 N.W.2d 404, 413 (Minn. 1980); (3) combined with a confidential relationship, the bank has greater access to facts and legal resources, see May v. First Nat'l Bank of Grand Forks, 427 N.W.2d 285, 289 (Minn. Ct. App. 1988); or (4) the bank and the customer have disparate levels of business experience and the bank invites the customer to place his confidence in the bank, see Murphy v. Country House, Inc., 240 N.W.2d 507, 512 (Minn. 1976).

Alan has provided no evidence to suggest any of the above circumstances is present here. Ennen evaluated the Roerses' assets, offered them options to procure the financing they required to purchase the ranch, and relied upon a third-party's appraisal to formulate the ultimate mortgage agreements. Having reviewed the record before the district court, we agree with its conclusion that Ennen and the Roerses were parties to a typical borrower-lender relationship in which Ennen owed no duty of care to the Roerses under Minnesota law. Accordingly, the district court did not err in granting Countrywide's motion for summary judgment on Alan's claims for negligent misrepresentation and breach of fiduciary duty.

## C. Claims Abandoned on Appeal

Both Alan and Cynthia purport to appeal the district court's order, granting summary judgment in favor of Countrywide, in its entirety. Aside from the claims discussed above, however, neither Cynthia nor Alan addresses any remaining claims on appeal. Specifically, Cynthia's brief argues the district court erred only with respect to her rescission claim and makes no mention of her claims for intentional or negligent misrepresentation. Similarly, Alan's brief echoes Cynthia's arguments regarding rescission for her nonmarital properties but makes no mention of his claim for rescission of the mortgage agreement on the ranch itself. By failing to assign

error to those portions of the district court's order, the Roerses have waived any alleged error with respect to those findings. See United States v. Gonzales, 90 F.3d 1363, 1369-70 (8th Cir. 1996).

## III

For the foregoing reasons, we affirm the judgment of the district court with respect to the Roerses' claims of intentional and negligent misrepresentation, breach of fiduciary duty, and for rescission of the mortgage agreement on the ranch. With respect to the Roerses' mutual-mistake claims regarding Cynthia's nonmarital properties, the judgment of the district court is reversed. On those claims, we remand for further proceedings consistent with this opinion to determine whether the Roerses should be permitted to rescind the mortgage agreements by returning to Countrywide the $1,146,800 owed in exchange for unencumbrance of the affected properties.

_____