Wilhelmina M. Wright, United States District Judge
In this case involving alleged violations of the Telephone Consumer Protection Act (TCPA), Defendant Ocwen Loan Servicing, LLC (Ocwen), moves to dismiss Plaintiff Israel Aquilar's amended complaint or, in the alternative, to stay the proceedings pending a decision by the United States Court of Appeals for the District of Columbia Circuit in ACA International v. FCC , No. 15-1211 (D.C. Cir.). (Dkts. 8, 25.) For the reasons addressed below, the Court grants in part and denies in part Ocwen's motion to dismiss and denies Ocwen's motion to stay the proceedings.
BACKGROUND
Aquilar alleges in his amended complaint that, beginning on April 13, 2012, and continuing at least through December 15, 2015, Ocwen made more than 1,000 unsolicited calls to Aquilar's cellular telephone to collect a consumer debt Aquilar allegedly owed. Aquilar claims that Ocwen placed these calls using an automatic telephone dialing system (ATDS) "and/or using an artificial or prerecorded voice," in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§ 227 et seq. Aquilar alleges that he "clearly revoked any type of prior express consent" that he had given Ocwen, "if prior express consent ever existed to begin with." But the calls allegedly continued despite this revocation of consent. Aquilar commenced this lawsuit against Ocwen on May 9, 2017, seeking statutory damages, actual damages, and injunctive relief for negligent violations of the TCPA (Count I), for "knowing and/or willful violations" of the TCPA (Count II), and for common-law negligence (Count III).
Ocwen now moves to dismiss Aquilar's amended complaint for failure to state a claim on which relief can be granted. Alternatively, Ocwen seeks to stay the proceedings pending a decision by the United States Court of Appeals for the District of Columbia Circuit in ACA International v. FCC , No. 15-1211 (D.C. Cir.). The petitioners in ACA International have challenged the validity of a July 2015 Federal Communications Commission (FCC) Order (2015 FCC Order) in which the FCC interpreted the definition of the statutory term "automatic telephone dialing system," a term that is at issue here. The D.C. Circuit heard oral argument in ACA International on October 19, 2016.
ANALYSIS
I. Ocwen's Motion to Dismiss for Failure to State a Claim
A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim for relief is stated. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ; see also Fed. R. Civ. P. 12(b)(6). When applying this pleading standard, a district court accepts as true the factual allegations in the complaint and draws all reasonable inferences *1004 in the plaintiff's favor. Blankenship v. USA Truck, Inc. , 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plaintiff must do more than offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555, 127 S.Ct. 1955. A court may disregard legal conclusions that are couched as factual allegations. See Iqbal , 556 U.S. at 678-79, 129 S.Ct. 1937.
Ocwen moves to dismiss Aquilar's amended complaint on the ground that it does not state a plausible claim for relief under the TCPA or the common law of negligence. Aquilar opposes dismissal and counters that the amended complaint alleges sufficient facts to support his TCPA claims and common-law negligence claim.
A. TCPA Claims
Ocwen asserts that Aquilar's TCPA claims must be dismissed for two reasons-first, they are time-barred; and second, Aquilar fails to sufficiently plead revocation of consent to receive calls as required under the TCPA.
1. Time-Barred Claims Under the TCPA
Ocwen argues that Aquilar's TCPA claims are time-barred because Aquilar alleges that some of the calls occurred outside the TCPA's four-year statute of limitations. Aquilar counters that the statute of limitations was tolled and the claims are not timebarred under the TCPA.
A statute-of-limitations defense is "typically an affirmative defense, which the defendant must plead and prove." Jessie v. Potter , 516 F.3d 709, 713 n.2 (8th Cir. 2008). Unless the complaint itself establishes the statute-of-limitations defense, the possible existence of such a defense is not a basis for relief under Rule 12(b)(6). Joyce v. Armstrong Teasdale, LLP , 635 F.3d 364, 367 (8th Cir. 2011) ; see also Hile v. Jimmy Johns Highway 55, Golden Valley , 899 F.Supp.2d 843, 847 n.6 (D. Minn. 2012) ("[Q]uestions regarding timeliness generally must be resolved by a motion for summary judgment rather than a motion to dismiss."). A plaintiff need not plead facts responsive to an affirmative defense before that defense is raised. Braden v. Wal-Mart Stores, Inc. , 588 F.3d 585, 601 n.10 (8th Cir. 2009).
The statute of limitations for Aquilar's claims tolled on May 9, 2017, when Aquilar filed his complaint. Because the TCPA has a four-year statute of limitations, see 28 U.S.C. § 1658(a) ; Hashw v. Dep't Stores Nat'l Bank , 182 F.Supp.3d 935, 941 n.2 (D. Minn. 2016), calls that Aquilar received on or after May 9, 2013, can serve as grounds for his TCPA claims. Aquilar alleges that, beginning on April 13, 2012, he received calls from Ocwen in violation of the TCPA. The amended complaint does not specify the date of each call, but Aquilar alleges that the calls continued at least through December 15, 2015, which is well within the four-year limitations period preceding the filing of Aquilar's complaint. See Peppin v. Bodie-Miner , No. 16-1320, 2016 WL 7368194, at *6 (D. Minn. Nov. 29, 2016) ("[B]ecause plaintiff did not allege any dates, the Complaint does not, on its face, establish a statute of limitations defense. Accordingly, the absence of specific dates is not a ground for dismissing the Complaint under Rule 12(b)(6)."), report and recommendation adopted , No. 16-1320, 2016 WL 7366082 (D. Minn. Dec. 19, 2016).
Aquilar alleges that he received calls in violation of the TCPA within the four-year period prior to the initiation of this lawsuit.
*1005 [1] For this reason, the amended complaint does not establish on its face a statute-of-limitations defense that is sufficient to warrant dismissal of Aquilar's TCPA claims under Rule 12(b)(6).
2. Revocation of Consent Under the TCPA
Ocwen also argues that Aquilar has not alleged his revocation of consent with the necessary specificity to state a TCPA claim.
To state a claim under the TCPA, a plaintiff must allege that the defendant (1) called a cellular telephone number, (2) used an automatic telephone dialing system or an artificial or prerecorded voice to do so, and (3) lacked the plaintiff's prior express consent. 47 U.S.C. § 227(b)(1)(A) ; Smith v. Securus Techs., Inc. , 120 F.Supp.3d 976, 980 (D. Minn. 2015) ; see also Zean v. Fairview Health Servs. , 858 F.3d 520, 525-26 (8th Cir. 2017) (affirming dismissal of TCPA claim because complaint failed to allege that defendant lacked prior express consent). The FCC has clarified that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 , 23 FCC Rcd. 559, 564 (Jan. 4, 2008). Such autodialed and prerecorded-voice calls to wireless numbers are permissible. Moreover, the provision of a cell phone number to a creditor "reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." Id.
In the 2015 FCC Order, however, the FCC recognized that consumers may revoke their consent using any reasonable means, including oral or written notice. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 , 30 FCC Rcd. 7961, 7996 (July 10, 2015). "Consumers generally may revoke, for example, by way of a consumer-initiated call [or] directly in response to a call initiated or made by a caller ...." Id. Although the 2015 FCC Order currently is on appeal to the D.C. Circuit in ACA International , this Court is bound by the FCC's interpretations of the TCPA unless those interpretations are invalidated by a federal court of appeals. See 28 U.S.C. §§ 2342 et seq. ; see also Wright v. Target Corp. , No. 14-cv-3031, 2015 WL 8751582, at *5 (D. Minn. Dec. 14, 2015) (recognizing that the 2015 FCC Order's statements addressing revocation of consent are binding on district courts notwithstanding the pending appeal in ACA International ).[2] When a complaint alleges prior express consent and does not plead revocation, a TCPA claim cannot survive a Rule 12(b)(6) motion to dismiss. See *1006 Steinhoff v. Star Tribune Media Co. , No. 13-cv-1750, 2014 WL 1207804, at *5 (D. Minn. Mar. 24, 2014) (granting defendant's motion for judgment on pleadings when plaintiff conceded there was no affirmative act revoking prior express consent).
Ocwen's argument that the amended complaint alleges Aquilar's prior express consent but does not allege revocation of that consent is unavailing. Aquilar alleges that the calls he received were part of Ocwen's "attempt to collect on a consumer debt allegedly due and owing by [Aquilar]." But the amended complaint does not allege a preexisting relationship between Ocwen and Aquilar that would allow the Court to infer prior express consent. To the contrary, the amended complaint suggests that Aquilar might never have provided consent. Even if the amended complaint alleged prior express consent, Aquilar also alleges that he revoked any consent when he "answered several of the above mentioned telephone calls from [Ocwen] and asked [Ocwen] to stop calling." Aquilar alleges that "[d]espite this clear and unmistakable request, the calls continued without interruption."
Aquilar's factual allegations are sufficient to survive a motion to dismiss. Aquilar has alleged that he revoked prior consent, if any had been given, and that Ocwen continued to call him after the revocation of consent. Because these allegations state a claim for relief under the TCPA, Ocwen's motion to dismiss Aquilar's TCPA claims fails.
B. Common-Law Negligence
Ocwen argues that Aquilar has not pleaded the existence of a legal duty or actual damages sufficient to state a plausible claim for common-law negligence.[3] Aquilar counters that Ocwen had a duty to refrain from excessively calling Aquilar because it was foreseeable that Ocwen's excessive calls would result in injury.
Under Minnesota law, a party claiming common-law negligence must allege "(1) the existence of a legal duty, (2) a breach of that duty, (3) causation, and (4) injury." Moorhead Econ. Dev. Auth. v. Anda , 789 N.W.2d 860, 888 (Minn. 2010). Determining that a duty of care exists in a relationship is a threshold issue of law, without which liability cannot attach. Williams v. Smith , 820 N.W.2d 807, 816 (Minn. 2012). The existence of a duty of care derives from the parties' legal relationship "and a determination that the plaintiff's interests are entitled to legal protection against defendant's conduct." Id.
Aquilar alleges that "[Ocwen] had a duty to use care to not infringe on [Aquilar's] privacy rights when collecting on alleged debts and not calling [Aquilar] hundreds of times to harass and/or abuse" him. But lenders have no fiduciary duty to borrowers under Minnesota law. Klein v. First Edina Nat'l Bank , 293 Minn. 418, 196 N.W.2d 619, 623 (1972). And Aquilar does not allege facts that, if true, would establish that a special relationship existed between him and Ocwen such that a duty of care arose. See *1007 Roers v. Countrywide Home Loans, Inc. , 728 F.3d 832, 838 (8th Cir. 2013) (explaining that Minnesota courts recognize "special relationship[s] giving rise to a fiduciary duty" between a borrower and a lender). Instead, Aquilar merely recites the elements of negligence and concludes, without legal support, that Ocwen breached a duty. This formulaic recitation of the elements of negligence fails to state a claim on which relief can be granted. See Twombly , 550 U.S. at 555, 127 S.Ct. 1955. Ocwen's motion to dismiss is granted as to Aquilar's common-law negligence claim.
II. Ocwen's Motion to Stay
Ocwen also moves to stay the proceedings in this lawsuit pending the resolution of ACA International by the D.C. Circuit. It is well-established that the Court's power to stay proceedings is incidental to its power to control the disposition of cases on its docket "with economy of time and effort for itself, for counsel, and for litigants." Cottrell v. Duke , 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting Landis v. N. Am. Co. , 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ). The decision whether to stay proceedings rests within a district court's broad discretion when doing so is appropriate to control its docket. Sierra Club v. U.S. Army Corps of Eng'rs , 446 F.3d 808, 816 (8th Cir. 2006) (citing Clinton v. Jones , 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ). Factors relevant to a district court's determination on this matter include docket control, conservation of judicial resources, and facilitation of the just determination of cases pending before the court. Kemp v. Tyson Seafood Grp., Inc. , 19 F.Supp.2d 961, 964 (D. Minn. 1998).
Although a district court's discretion to stay proceedings is broad, the proponent of a stay "bears the burden of establishing its need." Kreditverein der Bank Austria v. Nejezchleba , 477 F.3d 942, 945 n.3 (8th Cir. 2007) (citing Clinton , 520 U.S. at 708, 117 S.Ct. 1636 ). In meeting this burden, the proponent of the stay must demonstrate the specific hardship or inequity that would result if required to proceed. Jones v. Clinton , 72 F.3d 1354, 1364 (8th Cir. 1996) (Beam, J., concurring) (citing Landis , 299 U.S. at 254-56, 57 S.Ct. 163 ). This burden includes a presumption favoring the party opposing a stay. Id. at 1365. Because a stay has the potential to damage the nonmoving party, a district court should exercise its discretionary power to stay proceedings in moderation. See Landis , 299 U.S. at 255, 57 S.Ct. 163.
A. Precedential Value of ACA International
Ocwen argues that a stay is appropriate here because the forthcoming decision from the D.C. Circuit in ACA International "may narrow [Aquilar's] TCPA claims or extinguish them entirely." Unless FCC regulations are stayed or overturned by a court of competent jurisdiction, "FCC regulations have the force of law and are binding upon ... federal district courts." U.S. W. Commc'ns, Inc. v. Minn. Pub. Utils. Comm'n , 55 F.Supp.2d 968, 972 (D. Minn. 1999) (internal quotation marks omitted); accord 28 U.S.C. § 2342(1). The Administrative Orders Review Act, 28 U.S.C. §§ 2341 et seq. , confers jurisdiction on the United States courts of appeals to review final orders of certain federal agencies, see Brown v. Nuclear Regulatory Comm'n , 644 F.3d 726, 727 (8th Cir. 2011) (per curiam). Of particular relevance here, courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders of the Federal Communications Commission." 28 U.S.C. § 2342(1).
ACA International consolidates petitions filed in several courts of appeals *1008 that challenge the 2015 FCC Order. "When multiple petitions for review of an FCC final order are filed in several circuit courts of appeals, and are consolidated and assigned to a single circuit, that court is 'the sole forum for addressing ... the validity of the FCC's rules.' " Frable v. Synchrony Bank , 215 F.Supp.3d 818, 822 (D. Minn. 2016) (quoting MCI Telecommc'ns Corp. v. U.S. W. Commc'ns , 204 F.3d 1262, 1267 (9th Cir. 2000) ). Should the D.C. Circuit reject the position adopted by the FCC in its 2015 Order, federal district courts likely would follow the D.C. Circuit's decision. Id. Consequently, the pending decision in ACA International will, at least, have highly persuasive value.
B. Materiality of ACA International to the Proceedings in this Lawsuit
Ocwen argues that the decision in ACA International will be material to the proceedings because it will establish the controlling law with respect to the statutory term "automatic telephone dialing system." The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity-(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The 2015 FCC Order defines "capacity" as present or future capacity. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 , 30 FCC Rcd. 7961, 7975-76 (July 10, 2015). Under the FCC's definition of capacity, both devices that already are configured for storing, generating, and calling random numbers and devices that could be configured to do so in the future are automatic telephone dialing systems. Id. The petitioners in ACA International argued that, contrary to the 2015 FCC Order, an automatic telephone dialing system "must be able to do more than dial numbers from a prepared list." Joint Brief for Petitioners at 32, ACA Int'l v. FCC , No. 15-1211 (D.C. Cir. Nov. 25, 2015). A definition that includes merely dialing numbers "from a database of numbers," the petitioners argued, does not comport with the statutory definition of an automatic telephone dialing system because a definition that includes merely dialing numbers from a database "erases the phrase 'using a random or sequential number generator' " from the statute. Id. at 33.
Ocwen argues that the D.C. Circuit's resolution of this issue will have a material effect on this case because Aquilar's claims depend on whether Ocwen's calls were placed with an automatic telephone dialing system, and the D.C. Circuit might "overturn or at least narrow the FCC's definition of an 'autodialer.' " But Ocwen does not explain how a change in the definition of "automatic telephone dialing system" will affect the viability of Aquilar's claims. Nor does Ocwen assert that, under a likely future definition, Ocwen's telephone system will not be classified as an automatic telephone dialing system and, therefore, will not be subject to the TCPA. Cf. Busch v. Bluestem Brands, Inc. , No. 16-cv-0644, 2017 WL 5054391, at *2-3 (D. Minn. Feb. 22, 2017) (granting motion to stay after defendant explained why its telephone system is likely not an "automatic telephone dialing system" under definitions of that phrase proposed by the petitioners in ACA International ); Frable , 215 F.Supp.3d at 820 ("Defendant contends that if the D.C. Circuit decides that 'capacity' means the 'present capacity' ... Defendant will be absolved from liability because its system lacks such 'present capacity.' ").
In opposition to a stay, Aquilar contends that "the 2015 Order will be presumed valid" by the D.C. Circuit because "[f]or more than a decade, the FCC has included predictive dialers like the one believed to *1009 be used by Ocwen every day within the scope of the TCPA's regulation of automatic telephone dialing systems." What is apparent from the parties' arguments is that neither the parties nor the Court can predict with any reasonable degree of certainty what decision the D.C. Circuit will reach. To speculate for decisional purposes would be improper and futile.
Moreover, Aquilar alleges that Ocwen placed calls using an automatic telephone dialing system "and/or using an 'artificial or prerecorded voice' as prohibited by 47 U.S.C. § 227(b)(1)(A)," and that "[s]ometimes, [Aquilar] would receive calls from [Ocwen] in which the caller was a recorded voice or message." Significantly, ACA International will not address prerecorded-voice calls, and several district courts have denied stays when plaintiffs alleged both automatic telephone dialing system and artificial- or prerecorded-voice claims. See, e.g., Anderson v. Credit One Bank, Nat'l Ass'n , No. 16cv3125, 2017 WL 4654646, at *3 (S.D. Cal. Oct. 17, 2017) (denying stay when plaintiff alleged automatic telephone dialing system and artificial-voice calls because "Plaintiff's TCPA claim will remain even if the D.C. Circuit's ruling impacts the definition of an ATDS"); Pendleton v. 1st Fin. Bank, USA , CIV 16-4171, 2017 WL 4012043, at *3 (D.S.D. Sept. 11, 2017) (denying stay because even if ACA International is favorable to defendant, it "will not affect [plaintiff's] additional claim that [defendant] used an artificial or prerecorded voice system"); Griffin v. Nationstar Mortg. LLC , No. 3:17-cv-100, 2017 WL 3648981, at *2, (S.D. Miss. Aug. 23, 2017) (denying stay when plaintiff alleged prerecorded-voice claims "since this issue is not presented in ACA International and will not be affected by the outcome of that case"); Petras v. Ocwen Loan Servicing, LLC , No. 5:17-cv-73-Oc-30PRL, 2017 WL 2426846, at *1 (M.D. Fla. June 5, 2017) (denying stay because "Plaintiff alleged that Defendant used either an ATDS or an artificial or pre-recorded voice each time it called him. So, even if the D.C. Circuit's ruling impacts the definition of an ATDS, Plaintiff's claims will remain intact and the Parties will still have to engage in discovery.").
In light of Aquilar's allegation that Ocwen placed calls using an artificial or prerecorded voice, Ocwen's argument that ACA International might dispose of Aquilar's claims is unavailing. Ocwen has not established that ACA International will have a material effect on how this case proceeds.
C. Hardship, Inequity, and Prejudice
A party seeking a stay must demonstrate the specific hardship or inequity that would result if it were required to proceed. Landis , 299 U.S. at 254-56, 57 S.Ct. 163. Ocwen argues that a stay is warranted because requiring the parties to engage in discovery and other pretrial litigation without a decision as to the controlling definition of "automatic telephone dialing system" will waste the resources of the Court and the parties. This hardship, Ocwen argues, outweighs any potential prejudice to Aquilar because a stay would be relatively short in duration. Aquilar counters that he would be greatly prejudiced by a stay because telephone records are not preserved indefinitely and third-party vendors might destroy their records before this lawsuit proceeds.
District courts throughout the country have stayed similar actions pending the decision in ACA International , reasoning that a stay will be relatively short in duration, conserve judicial resources, allow clarification of the law, and enable the district court to render a sound decision, without prejudicing the plaintiff. See, e.g., Frable , 215 F.Supp.3d at 821-23 ; see also *1010 Christianson v. Ocwen Loan Servicing, LLC , No. 17-1525, 2017 WL 5665211, at *2 (D. Minn. Nov. 20, 2017) ; Simms v. Synchrony Bank , No. 1:17-cv-0203, 2017 WL 3382072, at *2-3 (N.D. Ga. June 27, 2017) ; Rosales v. Heath , 8:17cv87, 2017 WL 2533365, at *2-3 (D. Neb. June 9, 2017). Conversely, other courts have denied motions to stay pending the D.C. Circuit's decision in ACA International because of the potential for a lengthy delay, the defendant's failure to demonstrate specific hardship or inequity absent a stay, the necessity for discovery regardless of the outcome of ACA International , the possibility that a delay would harm the plaintiff's ability to conduct discovery, and the presence of TCPA claims unaffected by ACA International. See, e.g., Anderson , 2017 WL 4654646, at *3 ; Riazi v. Ally Fin., Inc. , No. 4:17CV1705, 2017 WL 4269791, at *6 (E.D. Mo. Sept. 26, 2017) ; Williams v. Synchrony Bank , No. 17-2076, 2017 WL 4269919, at *2 (D. Kan. Sept. 26, 2017) ; Hiemstra v. Credit One Bank , No. 2:16-cv-2437, 2017 WL 4124233, at *2-3 (E.D. Cal. Sept. 15, 2017) ; Pendleton , 2017 WL 4012043, at *3.
Having carefully considered the parties' arguments, the Court concludes that the circumstances of this case do not warrant a stay. First, there is no indication of when the D.C. Circuit will issue its decision. As such, the duration of any stay would be unknown. "The passage of time has made even less persuasive the argument that a final ruling in ACA International , which was argued more than a year ago, is 'imminent.' " Franklin v. Ocwen Loan Servicing, LLC , No. 17-cv-02702, 2017 WL 4922380, at *4 (N.D. Cal. Oct. 31, 2017).
Second, the parties will be required to engage in discovery regardless of the D.C. Circuit's decision in ACA International because Aquilar's claims also involve allegations unaffected by that case, specifically the use of artificial- or prerecorded-voice calls. Moreover, as addressed above, Ocwen has not explained how a new definition of "automatic telephone dialing system" will affect the viability of Aquilar's claims. As such, Ocwen has not established that a stay will conserve the resources of the parties or the Court.
Third, Aquilar has identified specific hardship that would result from a stay. Telephone companies do not retain records indefinitely, and Aquilar maintains that he would be unduly prejudiced by a stay because records vital to his case might be destroyed. Conversely, Ocwen has not established that it will suffer any specific hardship or inequity if a stay is denied.
In sum, Ocwen has not carried its burden of establishing the necessity of a stay pending the resolution of ACA International .
ORDER
Based on the foregoing analysis and all the files, records and proceedings herein, IT IS HEREBY ORDERED :
1. Defendant Ocwen Loan Servicing, LLC's motion to dismiss, (Dkt. 25), is GRANTED with respect to Count III of the amended complaint, which is DISMISSED WITHOUT PREJUDICE , and DENIED in all other respects, as outlined herein.
2. Defendant's motion to stay, (Dkt. 8), is DENIED .

Aquilar also relies on the American Pipe tolling doctrine to argue that the limitations period extends beyond May 9, 2013. See Am. Pipe & Constr. Co. v. Utah , 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Because Aquilar's TCPA claims survive Ocwen's Rule 12(b)(6) statute-of-limitations argument, the Court need not consider the applicability of the American Pipe doctrine to resolve the pending motion.

Although the Eighth Circuit has not directly ruled on this issue, it acknowledged-before the 2015 FCC Order issued-that "other circuit courts have concluded that prior consent to call one's cell phone may be revoked under the TCPA." Brenner v. Am. Educ. Servs. , 575 Fed.Appx. 703, 703 (8th Cir. 2014) (per curiam) (citing Osorio v. State Farm Bank, F.S.B. , 746 F.3d 1242, 1255-56 (11th Cir. 2014) and Gager v. Dell Fin. Servs., LLC , 727 F.3d 265, 270-72 (3d Cir. 2013) ). In doing so, the Eighth Circuit vacated a summary judgment order and remanded the matter to the district court to consider whether the plaintiff had presented sufficient evidence of revoked consent so as to preclude summary judgment. Id.

Although the parties do not address which state's substantive law applies to this lawsuit, both parties rely on Minnesota law. See Winthrop Res. Corp. v. Stanley Works , 259 F.3d 901, 904 (8th Cir. 2001) (explaining that a federal court sitting in diversity must apply substantive law that forum state would apply). Aquilar is a resident of Minnesota, and neither party asserts that this lawsuit has a relationship to any other state. Cf. Christian v. Birch , 763 N.W.2d 50, 55 (Minn. Ct. App. 2009) (explaining that a court must consider choice-of-law question if some party "asserts that a case brought in Minnesota may have a significant relationship to more than one state"). For these reasons, the Court applies Minnesota substantive law.